UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
INTERNATIONAL EQUITY INVESTMENTS, INC.
and CITIGROUP VENTURE CAPITAL
INTERNATIONAL BRAZIL, LLC, on behalf of itself
and Citigroup Venture Capital International Brazil, L.P.
(f.k.a. CVC/Opportunity Equity Partners, L.P.),

                Plaintiffs,

            -against-                              05 Civ. 2745 (LAK)

OPPORTUNITY EQUITY PARTNERS, LTD.
(f.k.a. CVC/Opportunity Equity Partners, Ltd.) and
DANIEL VALENTE DANTAS,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## MEMORANDUM OPINION

Appearances:

> Howard S. Zelbo
> Carmine D. Boccuzzi
> Daniel M. Hibshoosh
> CLEARY GOTTLIEB STEEN & HAMILTON LLP
> *Attorneys for Plaintiffs*

> Philip C. Korologos
> George F. Carpinello
> BOIES, SCHILLER & FLEXNER LLP
> *Attorneys for Defendants*

LEWIS A. KAPLAN, *District Judge*.

        In the late 1990s, Citibank, N.A. ("Citibank") agreed to make defendant Opportunity

Equity Partners, Ltd. ("Opportunity"), an entity controlled by Daniel Valente Dantas, a Brazilian

banker, the sole general partner of an investment vehicle, Citigroup Venture Capital International

L.P. (the "CVC Fund" or the "Fund"), to which Citibank contributed the entire $728 million in

capital. The CVC Fund now owns, through an elaborate holding company structure, a very substantial interest in Brasil Telecom S.A. ("Brasil Telecom"), a provider of fixed-line and cellular telephone services in Brazil.

Dantas used Opportunity's position as general partner of the Fund to place individuals loyal to him as directors of the companies at each level of the holding company structure through which the Fund held its investment in Brasil Telecom. So when he and Citibank had a falling out and Citibank caused its subsidiary, International Equity Investments, Inc. ("IEII"), to remove Opportunity as the general partner of the Fund, Dantas was not without weapons. He first resisted the removal of Opportunity by refusing to register its removal with appropriate legal authorities. He then used his control over the companies in the holding company structure to cause Brasil Telecom to seek to auction off assets and take other actions that Citibank regarded as inimical to its interests.

IEII brought this action in March 2005 and obtained a preliminary injunction compelling defendants to register the change of the general partner of the CVC Fund from Opportunity to Citigroup Venture Capital International Brazil, L.L.C. ("CVC Brazil") and to enjoin certain proposed Brasil Telecom asset sales.[1] It subsequently amended the complaint to add CVC Brazil as a plaintiff and obtained a considerably broader preliminary injunction in light of transactions that Dantas sought to effect pursuant to agreements entered into in April 2005.[2]

Now, after nearly a year of intensive litigation, defendants move to dismiss the action for lack of subject matter jurisdiction. They contend that the CVC Fund is the real party in interest,

---

[1] Docket item 26.

[2] *Int'l Equity Investments, Inc. v. Opportunity Equity Partners, Ltd.,* No. 05-2745 (LAK), 2005 WL 1307145 (S.D.N.Y. June 2, 2005) ("*IEII*").

that Opportunity remains a partner in the CVC Fund, that the CVC Fund therefore is an alien for jurisdictional purposes, and that the consequent presence of aliens as both plaintiff and defendants deprives the Court of subject matter jurisdiction.

### *Facts*

The background of this complex and evolving dispute, as of June 2005, is set forth in *IEII,* familiarity with which is assumed. It therefore is necessary to outline only those facts essential to resolution of the present dispute.

### *The Original Parties*

The sole plaintiff when this action was commenced on March 10, 2005 was IEII, a citizen of Delaware, the sole limited partner in the CVC Fund, and a wholly-owned subsidiary of Citibank.

The defendants were Opportunity, a corporation organized under the laws of the Cayman Islands and having its principal place of business in Brazil, and Dantas, the founder and controlling person of Opportunity. IEII on March 9, 2005 executed a document removing Opportunity as the general partner of the CVC Fund, but the document was not filed with the appropriate legal authority in the Caymans until March 18, 2005. Although defendants now seek to backpedal, defendants' answers twice have admitted that IEII was and remains the sole limited partner in the CVC Fund.[3] Moreover, they repeatedly have admitted that Opportunity had no equity

---

[3] Answer [docket item 127] ¶ 1 (admitting that IEII "is, and was at all relevant times hereto, the sole limited partner of the CVC Fund"); Amended Answer [docket item 143] ¶ 1

interest in[4] nor made any capital contribution to the CVC Fund[5] and that it is "completely out of the [CVC] fund."[6]

The complaint, filed March 10, 2005, premised subject matter jurisdiction on alienage, as the plaintiff is a citizen of Delaware and the defendants citizens of foreign states.[7] It contained five claims for relief:

- Breach by defendants of the CVC Fund Limited Partnership Agreement ("LPA") by, *inter alia,* their (a) attempt to auction off the CVC Fund's indirect interests in Telemig and Amazonia in alleged derogation of IEII's right to have its newly appointed general partner of the CVC Fund manage those assets, (b) alleged self-dealing by allocating to the CVC Fund a promissory note rather than one-third of Highlake's equity, and (c) obstruction of IEII's contractual right to remove Opportunity as general partner of the CVC Fund (First Claim for Relief).

- Breach by defendants of their fiduciary duty to the limited partner of the CVC

---

(same).

[4]

Tr., Mar. 17, 2005, at 32 (admission by defendants' counsel that defendants had no equity in the Fund).

[5]

Answer ¶ 11 ("[N]either Opportunity Ltd. nor Dantas are investors in the CVC Fund.").

[6]

Tr., Apr. 28, 2005, at 4 (statement by defendants' counsel that defendants are "completely out of" the Fund); de Carvalho Decl., May 6, 2005, ¶ 53.

[7]

*See* 28 U.S.C. § 1332(a)(2).

Fund by the actions described above and by execution of a "Tag-Along Agreement" that allegedly benefitted their affiliates at the expense of the CVC Fund (Second Claim for Relief).

- Fraud and negligent misrepresentation by defendants' alleged misrepresentation to plaintiff of the nature of the Highlake transaction (Third and Fourth Claims for Relief).

- Professional malpractice based on defendants' failure to exercise the appropriate standard of care with respect to the CVC Fund and its limited partner, IEII (Fifth Claim for Relief).

*The Amended Complaint*

On April 13, 2005, plaintiff filed an amended complaint[8] that made two changes relevant here.

First, it added as a plaintiff CVC Brazil, which purports to sue on behalf of itself and the CVC Fund. The amended complaint, as amended,[9] alleges that CVC Brazil is a wholly-owned

---

[8] As defendants had not answered the original complaint, the amended pleading was filed as of right.

[9] Docket item 45. Plaintiff filed a second amended complaint on January 27, 2006 that made a technical correction but no other material changes.

subsidiary of IEII,[10] thus making it a citizen of Delaware.[11] It asserts, and defendants' answer admits, that the Court has subject matter jurisdiction on the basis of alienage.[12]

Second, the amended complaint broadened the scope of the action. It contains nine claims for relief, three of which are brought solely on behalf of IEII and the other six on behalf of both plaintiffs. In addition to the claims asserted in the original complaint, it seeks relief for, among other things:

> • breach of the LPA and of fiduciary duty and negligence by, among other things, failure properly to manage the CVC Fund in that the defendants (a) entrenched themselves in control of the Fund's portfolio companies at the expense of IEII and the Fund, (b) failed to cause Techold to convert its Solpart convertible preferred shares into common stock, (c) engaged in self-dealing in the sale of CVC Fund's Santos convertible debentures, and (d) caused the Fund to pay legal fees and the portfolio companies to pay underwriting fees for the benefit of the defendants and their affiliates (First, Second, and Fifth Claims for Relief).

---

[10]

Am. Cpt ¶ 2.

[11]

A limited liability company is a citizen of each state of which any of its members is a member. *Handelsman v. Bedford Village Assocs. Ltd. P'ship, L.P.,* 213 F.3d 48, 52 (2d Cir. 2000); *Ferrara Bakery & Café, Inc. v. Colavita Pasta & Olive Oil Corp.,* No. 98 Civ. 4344 (LAP), 1999 WL 135234 (S.D.N.Y. Mar. 12, 1999). As the only member of CVC Brazil is IEII, which is a citizen of Delaware, CVC Brazil is a Delaware citizen.

[12]

Am. Cpt ¶ 5; Answer ¶ 5.

- execution of the so-called BrT Tag Along Agreement and other agreements after Opportunity's removal as general partner in alleged breach of the LPA and the Operating Agreement (Sixth and Seventh Claims for Relief).

- causing the CVC Fund to pay certain legal expenses for the benefit of defendants or their affiliates (Eighth Claim for Relief).

*Discussion*

Defendants' position, reduced to its essentials, is that (1) the citizenship of the real party in interest controls for diversity and alienage purposes, (2) the CVC Fund owns the claims asserted in this action and therefore is the real party in interest, (3) the Fund is a citizen of every state of which any of its partners is a citizen, (4) Opportunity was a general partner of the CVC Fund until the removal document was filed on March 18, 2005 and then became a limited partner in the CVC Fund, and (5) as Opportunity is an alien, the Fund is an alien, and the presence of aliens as both plaintiff and defendants destroys subject matter jurisdiction.

A. *Jurisdiction at the Outset of the Action*

Jurisdiction normally is determined as of the commencement of the action.[13]

At the outset of the action, the plaintiff was IEII, a citizen of Delaware, and the defendants were Opportunity and Dantas, both aliens. In consequence, on the face of the complaint, the jurisdictional allegations appear to satisfy the requirements of 28 U.S.C. § 1332(a)(2).

---

[13] *E.g., Linardos v. Fortuna,* 157 F.3d 945, 947 (2d Cir. 1998).

Nevertheless, defendants argue that the Fund was *the* real party in interest.[14]  As the parties appear

to agree that Opportunity remained the general partner of the Fund until the March 18, 2005 filing

of the removal documents, defendants contend that Opportunity's status as a general partner when

the action began, which rendered the Fund an alien for jurisdictional purposes, foreclosed the

existence of alienage jurisdiction.

      Defendants' argument is based two premises.  The first is that the claims asserted in

the original complaint were derivative rather than direct, making the Fund the real party in interest.

The second is that there can be only one real party in interest in an action or, alternatively, that the

existence of a second real party in interest that cannot be joined without destroying diversity or

alienage jurisdiction requires dismissal of any claims of the properly-joined plaintiff.

      I take the second point first.  Defendants are wrong in supposing that there can be

only one real party in interest.[15]  "The right to enforce an action," and thus real party in interest

status, "is conferred by substantive law or by statutes."[16]  Thus, the question whether one or more

than one person or entity is a real party in interest with respect to any given claim depends upon

whether substantive law gives one or more than one person a right to enforce that claim.  Further,

putting subject matter jurisdiction to one side for the moment, only the rules of joinder bear on

---

[14]

    "Real parties in interest are the persons or entities possessing the right or interest to be enforced through the litigation."  4 MOORE'S FEDERAL PRACTICE § 17.10[1], at 17-10 to 17-11 (3d ed. 2005) ("MOORE").

[15]

    *E.g., HB Gen. Corp. v. Manchester Partners, L.P.,* 95 F.3d 1185, 1196-97 (3d Cir. 1996) ("There may be multiple real parties in interest for a given claim"); *accord* 4 MOORE § 17.10[1], at 17-13 to 17-16 (same).

[16]

    *See id.* § 17.10[1], at 17-13.

whether two or more plaintiffs may join in the same action two or more claims, even where each is the only real party in interest with respect to its own claim. Hence, where different claims are joined in the same complaint, it is entirely possible that a given plaintiff may be a or the real party in interest with respect to one claim but that another plaintiff, or a non-party, may be a or the real party in interest with respect to another. The complaint therefore cannot be considered in gross; a claim-by-claim analysis is required.

The original complaint contains a mixture of claims, some alleging direct injury to IEII and some alleging injury to the CVC Fund with consequent damage to IEII's interest as the sole equity partner. Examples of the former include the claims that defendants breached their duties by attempting to block IEII from removing Opportunity as the general partner and by deceiving it as to the Highlake transaction. An example of the latter is the claim that defendants breached their duties by allocating a note rather than equity to the CVC Fund in connection with the Highlake transaction. The real party in interest question therefore turns for each group of claims on whether IEII, the CVC Fund, or both have the right, under substantive law, to sue.

The first step in this analysis is choice of law, the contenders in this case being the substantive law of New York and the Cayman Islands. As neither side claims that Caymans law differs from that of New York as to whether IEII has the right to sue on claims that IEII was injured directly, however, the Court applies New York law to that question.[17] And the law may be stated

---

17

          *See, e.g., VTech Holdings Ltd. v. PricewaterhouseCoopers, LLP,* 348 F. Supp. 2d 255, 262 n.48 (S.D.N.Y. 2004).

          Defendants have submitted a declaration of William James Tyre Bagnall, a Cayman Islands attorney, which argues that the Cayman Islands Exempted Limited Partnership Law, 1991, altered for exempted limited partnerships (including the CVC Fund) the former rule that, like English but unlike most United States partnerships, Caymans limited partnerships are

succinctly: Where "the thrust of the plaintiff's action is to vindicate his personal rights as an individual and not as a stockholder on behalf of the corporation," the plaintiff may sue directly.[18]

Here, at least some of the claims asserted by IEII were to vindicate its own rights, independent of any wrong to the CVC Fund. The claims that defendants breached the LPA and otherwise acted improperly by obstructing IEII from seeking to remove Opportunity as general partner and by deceiving it in connection with the Highlake transaction are clear examples. Thus, IEII was a real party in interest with respect to at least some of the claims in the original complaint.

Claims that allege injury to the CVC Fund are another matter, and the parties have expended a lot of ink and energy debating choice of law and whether IEII has the right to sue on those claims. But that ultimately is beside the point for purposes of this motion, although it would be quite material in determining whether IEII may pursue such claims in its own name. The fact that there may be more than one real party in interest means that the failure to sue in the name of one of

_____

not recognized as entities separate and distinct from the partners who compose them and, in consequence, that the "CVC Fund is *a* proper plaintiff in this action." (Emphasis added) Mr. Bagnall, however, does not address the question whether a limited partner in a Caymans exempted limited partnership has the right to sue a general partner for breach of the general partner's contractual duties to the limited partner. As plaintiffs' expert has stated without contradiction, his declaration "casts no doubt on IEII's right, as a signatory to the LPA, to sue Opportunity for breach" of those duties. Brougham Decl., Jan. 20, 2006, ¶ 6. Indeed, Mr. Bagnall's view that the CVC is "a proper plaintiff" rather than "the only proper plaintiff" suggests that he is well aware of this distinction. Accordingly, even if the matter were governed by Cayman Islands law, the Court would conclude that IEII's claims against Opportunity for breach of duties owed individually and causing injury to it, independent of any injury to the Fund, are direct and that IEII is the real party in interest with respect to such claims.

[18]

*Albany Plattsburgh United Corp. v. Bell,* 307 A.D.2d 416, 419, 763 N.Y.S.2d 119, 122 (3d Dept. 2003) (internal quotation marks and citations omitted).

The same principle applies to limited partnerships. *Fraternity Fund Ltd. v. Beacon Hill Asset Management LLC,* 376 F. Supp.2d 385, 408 & n. 143 (S.D.N.Y. 2005) (collecting cases).

them does not automatically require dismissal of an action.[19] *A fortiori,* where one plaintiff is a real party in interest on claims as to which alienage or diversity jurisdiction exists and a non-party is the only real party in interest on other claims as to which such jurisdiction would be lacking, a lack of jurisdiction enabling the plaintiff to proceed in the name and on behalf of the non-party does not deprive the court of the power to determine the claims of the plaintiff as to which the plaintiff is the real party in interest. Whether the absence of the non-party requires dismissal of the action is governed instead by Rule 19.[20] Thus, even assuming that defendants are right in contending that the CVC Fund is a real party in interest with respect to some of the claims asserted in the original complaint, the Court nevertheless had subject matter jurisdiction, at least to the extent of IEII's direct claims against the defendants.[21]

This leaves the question whether IEII is a real party in interest with respect to the allegedly derivative claims based on injury to the CVC Fund, failing which those claims would have

---

[19]

*E.g., Excimer Assocs., Inc. v. LCA Vision, Inc.,* 292 F.3d 134, 140 (2d Cir. 2002) (where plaintiff's injury is direct, fact that another party also may have been injured and could assert its own claim does not preclude plaintiff from suing directly); *HB Gen. Corp.,* 95 F.3d at 1196 ("There may be multiple real parties in interest for a given claim, and if the plaintiffs are real parties in interest, Rule 17(a) does not require the addition of other parties also fitting that description.").

[20]

*E.g., Garcia v. Hall,* 624 F.2d 150, 151 (10th Cir. 1980) (ability of court to proceed on claim by an insured in the absence of a partially subrogated insurer, also a real party in interest, which cannot be joined without destroying complete diversity, governed by Rule 19); *Carpetland, U.S.A. v. J.L. Adler Roofing, Inc.,* 107 F.R.D. 357, 361 (N.D. Ill. 1985).

[21]

As a general matter, the failure promptly to raise a real party in interest objection – and defendants certainly failed to do so in a timely fashion here – waives the point, at least where as here the failure has been prejudicial. 4 MOORE § 17.12[2][a], at 17-64 to 17-66. The inability of parties to confer subject matter jurisdiction by agreement or acquiesence, however, implies that the point cannot be waived to whatever extent it implicates subject matter jurisdiction.

had to have been dismissed in consequence of the inability to join the Fund without destroying

alienage jurisdiction. This issue, however, has been mooted by the joinder of CVC Brasil, the new

general partner, which sues on behalf of both the Fund and itself.

B.      *The Indispensable Party Argument*

Defendants' fall-back position is that the CVC Fund was an indispensable party

whose absence required dismissal of the action. The argument, however, lacks merit.

The question whether a party is indispensable is governed by Rule 19.[22]  A court first

determines whether the allegedly indispensable party is "necessary" within the meaning of Rule

19(a).  If it is necessary, the court either must order its joinder or, if joinder is not feasible, determine

under Rule 19(b) whether its presence is indispensable to proceeding with the action.[23]

A party is "necessary" within the meaning of Rule 19(a) if complete relief cannot be

granted in its absence or the party claims an interest in the subject matter of the action:

> "and is so situated that the disposition of the action in the person's absence may (i)
> as a practical matter impair or impede the person's ability to protect that interest or
> (ii) leave any of the persons already parties subject to a substantial risk of incurring
> double, multiple, or otherwise inconsistent obligations by reason of the claimed
> interest."

Defendants have advanced no argument in support of the proposition that the CVC

Fund is a necessary party to the adjudication of IEII's direct claims against the defendants and the

Court has identified none.  So it is unnecessary even to consider the question of whether an inability

---

[22]

FED. R. CIV. P. 19.

[23]

*See generally ConnTech Dev. Co. v. Univ. of Conn. Educ. Prop., Inc.,* 102 F.3d 677, 681 (2d
Cir. 1996).

to join the CVC Fund as a plaintiff would have required dismissal. Nevertheless, any such argument – and defendants have mounted none – also would lack merit, particularly in view of the fact that IEII is the sole owner of the Fund.

C.      *The Effect of the Amended Complaint*

Defendants raise a similar question, albeit one more readily answered, based upon the joinder in the amended complaint, filed April 13, 2005, of CVC Brazil.

CVC Brazil, like IEII, is a Delaware citizen. The defendants both are aliens. In consequence, the requirements of alienage jurisdiction appear still to be satisfied. Defendants nevertheless argue that Opportunity became a limited partner of the CVC Fund upon its removal on March 18, 2005 as general partner[24] and that its citizenship therefore destroys alienage jurisdiction because the CVC Fund is the real party in interest with respect to the claims brought on its behalf by CVC Brazil. This argument is flawed for a number of reasons but it is necessary to address only one.

The defendants twice have admitted in answers that IEII "is, and was at all relevant times hereto, the sole limited partner of the CVC Fund." As the Supreme Court held in *Railway Co. v. Ramsey,*[25] "[c]onsent of parties cannot give the courts of the United States jurisdiction, but the parties may admit the existence of facts which show jurisdiction, and the courts may act judicially

---

[24]    It bases this argument on Section 7.5.1 of the LPA.

[25]    89 U.S. (22 Wall.) 322 (1874).

upon such an admission."[26] Defendants' admission that IEII always has been the only limited partner of the CVC Fund establishes that Opportunity never was a limited partner. Defendants' argument therefore is rejected.

*Conclusion*

For the foregoing reasons, defendants' motion to dismiss the action for lack of subject matter jurisdiction is denied in all respects.

SO ORDERED.

Dated: January 30, 2006

Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[26]

*Id.* at 327; *accord Meyer v. Berkshire Life Ins. Co.,* 372 F.3d 261, 265 (4th Cir. 2004); *Hogar Agua y Vida en el Desierto, Inc. v. Suarez-Medina,* 36 F.3d 177, 182 n.4 (1st Cir. 1994); *Ferguson v. Neighborhood Hous. Servs. of Cleveland, Inc.,* 780 F.2d 549, 551 (6th Cir. 1986); *Reale Int'l, Inc. v. Federal Republic of Nigeria,* 647 F.2d 330, 332 n.5 (2d Cir. 1981); *United States v. Anderson,* 503 F.2d 420, 422 (6th Cir. 1974); *Gentner v. Cheyney Univ. of Pa.,* Civ. A. No. 94-7443, 1998 WL 32652, at *1-*2 (E.D. Pa. Jan. 27, 1998).