UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
INTERNATIONAL EQUITY INVESTMENTS,
INC. and CITIGROUP VENTURE CAPITAL
INTERNATIONAL BRAZIL, LLC, on behalf of
itself and Citigroup Venture Capital International
Brazil, L.P. (f.k.a. CVC/Opportunity Equity
Partners, L.P.),

                Plaintiffs,

                -against-                              05 Civ. 2745 (LAK)

OPPORTUNITY EQUITY PARTNERS, LTD.
(f.k.a. CVC/Opportunity Equity Partners, Ltd.)
and DANIEL VALENTE DANTAS,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM AND ORDER**

LEWIS A. KAPLAN, *District Judge.*

        On April 20, 2006, the Court enjoined defendants from enforcing or otherwise giving effect to any provision of the Umbrella Agreement or taking any action in furtherance thereof.[1] Late this morning, defendants advised chambers that they wished to present a proposed order to show cause and apply for a temporary restraining order. The Court agreed to hear the parties at 2:15 p.m. today, at which time defendants presented a proposed order to show cause by which they sought an immediate order modifying the April 20, 2006 injunction, pending appeal. The Court heard

---

[1] *International Equity Investments, Inc. v. Opportunity Equity Partners, Ltd.,* 2006 WL 1044265 (S.D.N.Y. 2006) ("*IEII I*"). The ruling, however, contemplated the formulation of a more specific preliminary injunction, a process that now is in train. *Id.* at *8-9.

argument from both sides. The parties agreed that the application would be moot if not ruled upon by April 27, 2006 at 8 a.m., that the application would be treated as a motion for a preliminary injunction, and that the matter would be taken under submission and decided on the basis of defendants' papers and the oral argument. This is the Court's ruling on the motion, including its findings of fact and conclusions of law.

*Facts*

In view of the press of time, the Court assumes familiarity with *IEII I,* with *International Equity Investments, Inc. v. Opportunity Equity Partners, Ltd.,* 407 F. Supp.2d 483 (S.D.N.Y. 2005) (*"IEII II"*), and all prior rulings in this case. It adds only the following.

On September 30, 2005, plaintiffs and their allies ousted the Dantas group from the board and management of Brasil Telecom and replaced them with designees of their own.[2] From that day to this, plaintiffs and their allies have controlled the board and management of the company.

On March 28, 2006, Brasil Telecom issued a notice of a shareholder meeting to be held on April 28, 2006 at 10 a.m. The notice included as an agenda item the making "of a resolution on the proposal for the civil responsibility lawsuit in compliance with Law 6,404/76," i.e., to commence civil actions against officers and directors of Brasil Telecom that were removed on September 30, 2005. On the same day, BTP, Brasil Telecom's immediate parent, also noticed a shareholders meeting for April 28, 2006 at 2 p.m. for the same purpose.

On April 11, 2006, Zain announced the call of an extraordinary general meeting of

---

[2] They previously had ousted them from holding companies above Brasil Telecom in the chain of ownership.

shareholders for April 27, 2006 at 9 a.m. (8 a.m. EDT) to establish voting instructions for the vote to be cast by Zain at the prior shareholders' meeting of Invitel S.A. for the purpose of instructing votes to be cast by Invitel and its direct and indirect subsidiaries and also of BTP's board members appointed by Invitel in relation to matters to be discussed at their shareholder meetings, including those of Brasil Telecom and BTP.

The parties agree that the effect under Brazilian law of a vote by the shareholders of Zain to instruct Invitel to cast its votes and those of its direct and indirect subsidiaries in favor of instituting the lawsuits by Brasil Telecom and BTP against the Dantas directors and officers of those companies would be to disqualify those individuals from serving on those boards or as officers of those companies unless and until the lawsuits were withdrawn or terminated in favor of the individuals.

The claimed significance of all of this lies in the April 11, 2006 decision by the Brazilian intermediate appellate court that is described in *IEII I* at *4. Defendants contend that the effect of that decision was to restore the *status quo ante* as of May 11, 2005, i.e., that the decision effectively reinstated the Dantas designees to their former positions by operation of law. Plaintiffs claim otherwise. The matter is being litigated in Brazil as this is written.[3] Defendants seek relief here because they contend that a vote by the Zain shareholders tomorrow morning could disqualify their designees under the Brazilian code independent of the effect of the April 11, 2005 Brazilian

---

[3] The parties appear to agree that the April 11, 2006 decision is appealable but has not yet been appealed. Two proceedings of some other sort have been brought in Brazil's highest court in respect of that decision and one decided, although the parties disagree as to the substance of the decision. As no copy has been provided to the Court, it declines to make any finding on the point save to say that the intermediate appellate court decision is by no means final.

decision. They regard the imminent shareholder meetings as an attempt to make an end run around that ruling.

*Discussion*

*Temporary Modification of the April 20 Order*

Defendants argue that the factors pertinent to issuance of a stay or modification of a preliminary injunction pending appeal are (1) likelihood of success on the merits, (2) irreparable injury if a stay is denied, (3) substantial injury to the party opposing a stay if one is issued, and (4) the public interest. The Court assumes so for the purposes of this application.

*Irreparable Injury*

Defendants claim that they are threatened with irreparable injury on the theory that the plaintiffs and their designees, in light of the April 11 Brazilian decision, have no legal authority to hold their positions, call meetings or otherwise manage the companies in question. They invoke *IEII I* and *II,* where this Court observed that deprivation of a right to participate in control or management of a company threatens irreparable injury. There are at least three flaws in the argument.

First, defendants' argument assumes that the Brazilian court necessarily gave defendants the untrammeled right to control Brasil Telecom and the companies in the holding structure above it. But, as this Court held in *IEII I*, the Brazilian decision held principally that a suit by certain investors in the Onshore Fund for a determination that the Umbrella Agreement was null and void *as between the Onshore Fund and the Dantas group* was untimely. It did not address the

basis upon which this Court issued the injunction in question – *viz.*, assuming *arguendo* that the Dantas group has the right *as against the Onshore Fund* to vote the Onshore Fund's Zain shares, it holds that right by virtue of his position as a fiduciary for Citigroup's CVC Fund and may not use it to the detriment of that Fund or for his own benefit. *IEII I,* at *6-*7.

If this Court was correct in so holding, defendants are not threatened with injury at all, as they have no right to control Brasil Telecom and the other companies against the interests of the plaintiffs. To be sure, humility requires the acknowledgment that, as with any *nisi prius* decision, an appellate court might take a different view of the matter. In that event, defendants' attempt to exercise control could be thwarted by this Court's injunction *if* defendants' view of the effect of the April 11 Brazilian decision ultimately proves to be correct and *if* that decision ultimately withstands challenge. But that possibility alone does not suffice, for a threat of irreparable injury must be imminent or certain, not a matter of speculation. *E.g., Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.,* 60 F.3d 27, 37 (2d Cir. 1995).

Here, defendants, even on their own theory, would be frustrated in exercising control if and only if they prevail in the Brazilian litigation and of *IEII I* were reversed. While either is possible, the occurrence of both does not appear to be imminent or certain.

Second, as defendants acknowledged during argument, the disqualification effected by Brazilian law would be of only certain specific individuals and would not extend to other persons whom the defendants might designate to serve as officers or directors of the relevant companies should they succeed in the relevant *fora*. They have made no showing that the particular individuals, none of whom have they even named in the present application, are critical. Indeed, in a letter dated April 18, 2006, defendants' counsel told the Court that "in light of changed circumstances, the

directors and officers going forward should in many circumstances" not be those who were Dantas designees on May 11, 2005. Thus, defendants would not be frustrated by the Brazilian law of disqualification in seeking control through the designation of other individuals.

Third, threatened injury, in order to ground provisional relief, must be of a nature that cannot be undone. If defendants regain control, they will be in a position to cause Brasil Telecom and BTP to withdraw any suits that might be instituted against the particular individuals. The parties have acknowledged that any disqualification effected by the imminent shareholder vote would be eliminated by such a withdrawal. Tr., Apr. 26, 2006, at p. 7-8 and p. 16.

For all of the foregoing reasons, the Court finds that defendants are not threatened with irreparable injury sufficient to ground the relief they seek. Finally, it bears noting that the traditional purpose of provisional relief is to preserve the *status quo*. It is undisputed that Citigroup's designees have been running Brasil Telecom since September 30, 2005. The relief defendants seek is designed to alter the *status quo*.

*Likelihood of Success*

Defendants argue that they are likely to prevail on appeal for a number of reasons, principally that the Court erred in finding that the execution of the Umbrella Agreement was a breach of duty. With respect, that contention is a rehash of an argument previously rejected. *IEII I,* at * 6-*7. It has not improved with age or repetition. Even more to the point, the Court made plain that this was not the basis upon which it found that plaintiffs were likely to prevail. *Id.* at *7 ("the motion ultimately may be decided on another basis"). Rather, it held that:

> "Even if Citibank gave informed consent to the agreement itself, it did not thereby consent to Dantas's use against it of powers thus conferred. Its position would be no different in principle than that of a settlor of a trust who finds that a faithless trustee has used signature authority over a trust account to embezzle trust funds.
>
> "Accordingly, plaintiffs are likely to prevail on their claim that defendants' proposed use of the Umbrella Agreement to take control of Zain, the holding companies beneath it, and Brasil Telecom would breach their fiduciary duty to the CVC Fund." *Id.*

Defendants' present motion does not even address this holding, let alone demonstrate that it probably is wrong.

Defendants' other arguments as to the supposed error of *IEII I*, like that concerning execution of the Umbrella Agreement, are nothing more than unpersuasive reiterations of contentions already made and rejected with one partial exception.

Defendants did previously argue that the Court should have required a substantial bond. The April 20, 2006 order did not do so, as the Court assumed that the parties would address the requirement of a bond in settling the ultimate form of the preliminary injunction. As defendants now press the point again, however, the Court addresses it below. For present purposes, it suffices to say that there is no basis for supposing that the preliminary injunction will be overturned for failure to require a bond.

The Court has considered defendants' other arguments and concluded that they are without merit.

*The Bond*

Rule 65(c) provides in pertinent part that:

"No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongly enjoined or restrained."

It affords security for only those damages "that are proximately caused by the [wrongful] issuance of [an] injunction. Thus, the damages award is limited to those damages 'arising from the operation of the injunction itself and not from damages occasioned by the suit independent of the injunction.'" *B.G. Soft Ltd. v. BG Soft International, Inc.,* No. CV-01-17 (RR)(VVP), 2002 WL 1467744, at *2 (E.D.N.Y. Apr. 29, 2002) (Raggi, J.) (quoting *Medafrica Line, S.P.A. v. American West African Freight Conference,* 654 F. Supp. 155, 156 (S.D.N.Y. 1987)). A motion court in fixing the amount of security required "need not order security in respect of asserted economic damages that are speculative at best." *Interlink International Financial Servs., Inc. v. Block,* 145 F. Supp.2d 312, 315 (S.D.N.Y. 2001) (internal quotation marks and citation omitted). The burden, moreover, is on the party seeking security to establish a rational basis for the amount of the requested bond. *See, e.g., Inflight Newspapers, Inc. v. Magazines In-Flight, LLC,* 990 F. Supp. 119, 140 (E.D.N.Y. 1997); *see also Bass v. Richardson,* 338 F. Supp. 478, 491 (S.D.N.Y. 1971).

Defendants have sought a bond of at least $100 million, although they have acknowledged that it is "very hard to value what the size of the bond should be." Tr., Mar. 28, 2006, at 35-36. The only yardsticks they advanced were (1) the market value of defendants' shares, which they put in the "hundreds of millions of dollars," and (2) the premium above market value that they stood to make had the Telecom Italia deal that was enjoined last June been consummated. *Id.* at 36.

The first of these measures may be rejected out of hand. There simply is no non-speculative basis to conclude that the market value of Brasil Telecom shares is likely to fall as a proximate result of the April 20, 2006 injunction, particularly given the fact that Citigroup itself has an investment, at cost, of more than $700 million in the company, let alone that any such drop likely would diminish the market value of defendants' shares by anything approaching $100 million.

The second measure also is flawed, at least because it is directed at the wrong injunction. The Telecom Italia deal was enjoined last June and could not go forward even if this injunction had not issued.

For the foregoing reasons, the Court declines to require the posting of a bond as extravagant as defendants seek. Defendants have offered no persuasive rationale for a bond in a smaller amount. In all the circumstances, the continuation of the April 20, 2006 injunction beyond 5 p.m. on May 3, 2006 is conditioned upon the posting by plaintiffs at or before that time of a bond in the amount of $5 million. As always, the Court stands ready to adjust the amount of the bond if changed circumstances warrant.

*Conclusion*

For the foregoing reasons, the defendants' motion for a preliminary injunction, styled a motion to modify the April 20, 2006 preliminary injunction, is denied. The continuation of the April 20, 2006 injunction beyond 5 p.m. on May 3, 2006 is conditioned upon the posting by plaintiffs at or before that time of a bond in the amount of $5 million.

SO ORDERED.

Dated: April 26, 2006
Issued at: 5:50 p.m.

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)