UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

INTERNATIONAL EQUITY INVESTMENTS, INC.,
and CITIGROUP VENTURE CAPITAL
INTERNATIONAL BRAZIL, LLC, ON BEHALF OF
ITSELF AND CITIGROUP VENTURE CAPITAL
INTERNATIONAL BRAZIL, L.P. (f.k.a.
CVC/OPPORTUNITY EQUITY PARTNERS, L.P.),

                Plaintiffs,

                v.

OPPORTUNITY EQUITY PARTNERS LTD. (f.k.a.
CVC/OPPORTUNITY EQUITY PARTNERS LTD.),
DANIEL VALENTE DANTAS, ARTHUR JOAQUIM
DE CARVALHO, DORIO FERMAN, OPPORTUNITY
FUND, BANCO OPPORTUNITY S.A. and
OPPORTUNITY PRIME INVESTMENT SERVICES,
LTD.,

                Defendants.

-----------------------------------------------------------------------X

05 Civ. 2745 (LAK)

**REDACTED**

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE THIRD AMENDED COMPLAINT

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for Plaintiffs

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................... iii

FACTUAL BACKGROUND............................................................................................ 1

ARGUMENT.................................................................................................................. 6

POINT I

THIS COURT HAS PERSONAL JURISDICTION OVER
ALL OF THE DEFENDANTS ...................................................................................... 6

A.    The Court Has Jurisdiction Over All Defendants
      Under The Forum Selection Clauses In The LPA And OA ................................... 7

      1.    Carvalho, Ferman And Banco Opportunity Are Subject
            To Valid Forum Selection Clauses.............................................................. 7

      2.    All Defendants Are Bound As "Closely Related" Parties.......................... 12

B.    The Court Also Has Jurisdiction Over All Defendants Under
      The New York Long Arm Statute .......................................................................... 14

      1.    302(a)(1) ................................................................................................... 14

      2.    302(a)(3) ................................................................................................... 18

      3.    Due Process .............................................................................................. 20

C.    Opportunity Fund, Banco Opportunity And Opportunity Prime
      Are Subject To Jurisdiction As The Alter Egos Of Opportunity,
      Dantas And Carvalho .......................................................................................... 21

D.    If The Defendant's Motions Are Not Denied Outright
      The Plaintiffs Are Entitled To Jurisdictional Discovery ...................................... 27

POINT II

ALL OF THE PLAINTIFFS' CLAIMS AGAINST
DEFENDANTS STATE VALID GROUNDS FOR RELIEF ........................................... 29

A.    Carvalho Violated Fiduciary Duties
      Owed to Plaintiffs (Count 2) ................................................................................ 29

Page

B.    Defendants Breached The LPA And OA (Counts 1, 7) ......................................    31

C.    Plaintiffs Have Stated Claims For Conversion,
      Fraud, And Negligent Misrepresentation ...............................................    33

      1.    Conversion (Count 8) ...............................................    33

      2.    Fraud And Negligent Misrepresentation (Counts 3 and 4)........................    35

      3.    These Tort Claims Cannot Be
            Dismissed As Improperly Duplicative ......................................    37

D.    The Unjust Enrichment Claims Are Not Precluded ..............................    38

E.    Opportunity Fund, Banco Opportunity And Opportunity Prime
      Are Liable As The Alter Egos Of Dantas, Carvalho And Opportunity..................    39

POINT III

PUNITIVE DAMAGES ARE RECOVERABLE
UNDER NEW YORK LAW..................................................................    40

CONCLUSION ..........................................................................    42

ii

# TABLE OF AUTHORITIES

Page(s)

**Rules and Statutes**

N.Y. CPLR 302(a)(1) (McKinney 2001)............................................................. 14

N.Y. CPLR 302(a)(3) (McKinney 2001)............................................................. 18

**Cases**

Affiliate Ute Citizens v. United States,
406 U.S. 128, 92 S. Ct. 1456 (1972) ................................................................... 36

Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.,
98 F.3d 25 (2d Cir. 1996) ................................................................................... 15

Airlines Reporting Corp. v. Vinogradova (In re Vinogradova),
270 B.R. 159 (Bankr. S.D.N.Y. 2001).................................................................. 34

Ameritrust Co. Nat'l Ass'n v. Chanslor,
803 F. Supp. 893 (S.D.N.Y. 1992) ...................................................................... 9

Arrowsmith v. United Press Int'l,
320 F.2d 219 (2d Cir. 1963) ............................................................................... 6

Astroworks, Inc. v. Astroexhibit, Inc.,
257 F. Supp. 2d 609 (S.D.N.Y. 2003) ................................................................. 34, 39

Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,
171 F.3d 779 (2d Cir. 1999) ............................................................................... 19

Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank,
57 F.3d 146 (2d Cir.1995) ................................................................................... 36

Basquiat v. Kemper Snowboards,
No. 96 Civ. 0185 (LAP), 1997 WL 527891 (S.D.N.Y. Aug. 25, 1997).............................. 18

Berrett v. Life Ins. Co. of the Sw.,
623 F. Supp. 946 (D. Utah 1985) ........................................................................ 12

Bildstein v. MasterCard Int'l, Inc.,
No. 03 Civ. 98261 (WHP), 2005 WL 1324972 (S.D.N.Y. June 6, 2005).......................... 38

Borumand v. Assar,
192 F. Supp. 2d 45 (W.D.N.Y. 2001)................................................................... 11

Page(s)

Braun v. Giarratano,
No. 00 Civ. 1767 (HGM/GJD), 2002 WL 1916368 (N.D.N.Y. July 30, 2002)................. 16

Brewster v Baltimore & Ohio R.R. Co.,
185 A.D.2d 653, 585 N.Y.S.2d 647 (4th Dep't 1992) ...................................................... 33

Burger King v. Rudzewicz,
471 U.S. 462, 105 S. Ct. 2174 (1985) ............................................................................ 20

Capital Venture Int'l v. Network Commerce, Inc.,
No. 01 Civ. 4390 (JSM), 2002 WL 417246 (S.D.N.Y. Mar. 15, 2002) ............................ 14

Cement & Concrete Workers Dist. Council Welfare Fund v. Lollo,
35 F.3d 29 (2d Cir. 1994) ............................................................................................ 9, 32

Champion Motor Group, Inc. v. Visone Corvette of Mass., Inc.,
992 F. Supp. 203 (E.D.N.Y. 1998).................................................................................. 17

Chiat/Day Inc. Adver. v. 800-Flowers, Ltd.,
No. 85 Civ. 0408 (CBM), 1985 WL 1215 (S.D.N.Y. May 7, 1985)................................. 16

Ciocca v. Neff,
No. 02 Civ. 5067 (LTS) (HBP), 2005 WL 1473819 (S.D.N.Y. June 22, 2005) ............... 29

CutCo Indus., Inc. v. Naughton,
806 F.2d 361 (2d Cir.1986) ........................................................................................... 14

Dardana Ltd. v. A.O. Yuganskneftegaz,
317 F.3d 202 (2d Cir. 2003) .......................................................................................... 28

Days Inn of Am., Inc. v. L.A., Inc.,
No. 97 Civ. 5476 (JGK), 1998 WL 765182 (S.D.N.Y. Nov. 3, 1998) ............................... 9

Derven v. PH Consulting, Inc.,
427 F. Supp. 2d 360 (S.D.N.Y. 2006) ............................................................................ 38

Direct Mail Prod. Servs. Ltd. v. MBNA Corp.,
No. 99 Civ. 10550 (SHS), 2000 WL 1277597 (S.D.N.Y. Sept. 7, 2000) .......................... 11-12, 14

EBC I, Inc. v. Goldman Sachs & Co.,
7 A.D.3d 418, 777 N.Y.S.2d 440 (1st Dep't 2004).......................................................... 37

EED Holdings v. Palmer Johnson Acquisition Corp.,
228 F.R.D. 508 (S.D.N.Y. 2005)..................................................................................... 40

Page(s)

E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.,
No. 82 Civ. 7327 (JSM), 1999 WL 350857 (S.D.N.Y. June 2, 1999),
aff'd, 241 F.3d 154 (2d Cir. 2001) ....................................................................................... 33

ESI, Inc. v. Coastal Corp.,
61 F. Supp. 2d 35 (S.D.N.Y. 1999) ..................................................................................... 16

Editorial Musical Latino Americana, S.A. v. Mar Int'l Records, Inc.,
829 F. Supp. 62 (S.D.N.Y. 1993) ........................................................................................ 17

Fashion Fragrance & Cosmetics v. Croddick,
No. 02 Civ. 6294 (WK), 2003 WL 342273 (S.D.N.Y. Feb. 13, 2003) ............................... 19

Feinberg v. Katz,
No. 99 Civ. 45 (CSH), 2002 WL 1751135 (S.D.N.Y. July 26, 2002).................................. 35

First City Fed. Sav. Bank v. Dennis,
680 F. Supp. 579 (S.D.N.Y. 1988) ...................................................................................... 15

Franklin v. Winard,
199 A.D.2d 220, 606 N.Y.S.2d 162 (1st Dep't 1993) ......................................................... 34

GLM Corp. v. Klein,
665 F. Supp. 283 (S.D.N.Y. 1987) ...................................................................................... 37

Global Intellicom, Inc. v. Thomson Kernaghan & Co.,
No. 99 Civ. 0342 (DLC), 1999 WL 544708 (S.D.N.Y. July 27, 1999) .............................. 20

Goodrich & Sherwood Co. v. Goodrich,
No. 83 Civ. 0857 (RWS), 1985 WL 2883 (S.D.N.Y. Oct. 5, 1985).................................... 8, 32

Gorrill v. IcelandAir/Flugleidir,
761 F.2d 847 (2d. Cir. 1985) ............................................................................................... 23

Grandon v. Merrill Lynch & Co.,
147 F.3d 184 (2d Cir.1998) ................................................................................................. 35

Greenlight Capital, Inc. v. GreenLight (Switzerland) S.A.,
No. 04 Civ. 3136 (HB), 2005 WL 13682 (S.D.N.Y. Jan. 3, 2005) ..................................... 6

Guilder v. Cornith Constr. Corp.,
235 A.D.2d 619, 651 N.Y.S.2d 706 (3d Dep't 1997).......................................................... 27

H & R Indus., Inc. v. Kirshner,
899 F. Supp. 995 (E.D.N.Y. 1995)....................................................................................... 41

Page(s)

Hargrave v. Oki Nursery, Inc.,
636 F.2d 897 (2d Cir. 1980) ............................................................................................ 19

Harsco Corp. v. Segui,
91 F.3d 337 (2d Cir.1996) .............................................................................................. 36

Hartford Fire Ins. Co. v. Evergreen Org., Inc.,
410 F. Supp. 2d 180 (S.D.N.Y. 2006) ........................................................................... 14

Huff v. Chandris SA,
No. 93 Civ. 6685 (SS), 1994 WL 414467 (S.D.N.Y. Aug. 8, 1994) ................................ 10

Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.,
419 F. Supp. 2d 395 (S.D.N.Y. 2005) ........................................................................... 10

In re Adler, Coleman Clearing Corp.,
399 F. Supp. 2d 486 (S.D.N.Y. 2005) ........................................................................... 27

In re Currency Conversion Fee Anitrust Litig.,
265 F. Supp. 2d 385 (S.D.N.Y. 2003) ...................................................................... 27, 40

In re InSITE Servs. Corp.,
287 B.R. 79 (Bankr. S.D.N.Y. 2002) ....................................................................... 23, 40

In re Parmalat Sec. Litig.,
375 F. Supp. 2d 278 (S.D.N.Y. 2005) ........................................................................... 27

In re Parmalat Sec. Litig.,
414 F. Supp. 2d 428 (S.D.N.Y. 2006) .................................................................. 6, 27, 39

In re Sumitomo Copper Litig.,
120 F. Supp. 2d 328 (S.D.N.Y. 2000) ........................................................................... 18

Int'l Equity Invs., Inc. v. Cico,
427 F. Supp. 2d 503 (S.D.N.Y. 2006) ........................................................................... 41

Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd.,
407 F. Supp. 2d 483 (S.D.N.Y. 2005) ........................................................................ passim

Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd.,
427 F. Supp. 2d 491 (S.D.N.Y. 2006) ..................................................................... 1, 2, 8

Int'l Private Satellite Partners, L.P. v. Lucky Cat Ltd.,
975 F. Supp. 483 (W.D.N.Y. 1997) ............................................................................... 12

                                                                                    Page(s)

It's Entm't, Div. of I.S. Enters., Inc. v. Choice Entm't, Inc.,
    No. 90 Civ. 0653 (RWS), 1991 WL 285615 (S.D.N.Y. Dec. 31, 1991) ............................    8-9, 9

James v. Powell,
    19 N.Y.2d 249, 279 N.Y.S.2d 10 (1967) ............................................................................    40

Jones v. Pricewaterhousecoopers, LLP.,
    Civ. No. 602962/2003, 2004 WL 3140909 (Sup. Ct. N.Y. County Nov. 5, 2004) ...........    37

Kernan v. Kurz-Hastings, Inc.,
    175 F.3d 236 (2d Cir. 1999) ..............................................................................................    1

Kinetic Instruments, Inc. v. Lares,
    802 F. Supp. 976 (S.D.N.Y. 1992) .....................................................................................    17

Kreutter v. McFadden Oil Corp.,
    71 N.Y.2d 460, 527 N.Y.S.2d 195 (1988) ..........................................................................    16-17

Lehman Bros., Inc. v. Tutelar CIA Financiera, S.A.,
    No. 95 Civ. 3772 (DLC), 1997 WL 403463 (S.D.N.Y. July 17, 1997) ...............................    9

Lindsay v. Wrecked & Abandoned Vessel R.M.S. TITANIC,
    No. 97 Civ. 9243 (HB), 1998 WL 557591 (S.D.N.Y. Sept. 2, 1998) .................................    22

LoPresti v. Terwilliger,
    126 F.3d 34 (2d Cir. 1997) ................................................................................................    34

Lumbermens Mut. Cas. Co. v. Franey Muha Alliant Ins. Servs.,
    388 F. Supp. 2d 292 (S.D.N.Y. 2005) ................................................................................    29, 31

Maalouf v. Salomon Smith Barney, Inc.,
    No. 02 Civ. 4770 (SAS), 2003 WL 1858153 (S.D.N.Y. April 10, 2003) ..........................    38-39

Madison Nat'l Bank v. NMM Realty Dev. Bank,
    No. 86 Civ. 5115 (PNL), 1990 WL 138952 (S.D.N.Y. Sept. 19, 1990) ............................    19

Mallis v. Bankers Trust Co.,
615 F.2d 68 (2d Cir. 1980),
    cert. denied, 449 U.S. 1123, 101 S. Ct. 938 (1981) ..........................................................    36

Mandelblatt v. Devon Stores, Inc.,
    132 A.D.2d 162, 521 N.Y.S.2d 672 (1st Dep't 1987) ........................................................ 29, 31, 37

Marine Midland Bank, N.A. v. Miller,
    664 F.2d 899 (2d Cir.1981) ...............................................................................................    7, 24

                                                                        Page(s)

Mason Tenders Dist. Council Welfare Fund v. Thomsen Constr. Co.,
301 F.3d 50 (2d Cir. 2002) ................................................................................    9

Mega Tech Int'l Corp. v. Al-Saghyir Establishment,
No. 96 Civ. 8711 (LBS), 1999 WL 269896 (S.D.N.Y. May 3, 1999) .................    15, 19

Mellon Stuart Co. v. N. River Ins. Co.,
No. 88 Civ. 4847 (JFK), 1990 WL 13168 (S.D.N.Y. Feb. 8, 1990) ...................    10

Mercury Time, Inc. v. Gruen Mktg. Corp.,
No. 97 Civ. 0020 (JG), 1999 WL 342299 (E.D.N.Y. May 26, 1999) ..................    21

Meyers v. Waverly Fabrics,
65 N.Y.2d 75, 489 N.Y.S.2d 891 (1985)............................................................    37

Mobile Data Shred, Inc. v. United Bank of Switzerland,
No. 99 Civ. 10315 (SAS), 2000 WL 351516 (S.D.N.Y. Apr. 5, 2000)...............    32

M/S Bremen v. Zapata Off-Shore Co.,
407 U.S. 1, 92 S. Ct. 1907 (1972) ......................................................................    7, 9

Nanopierce Techs., Inc. v. Southbridge Capital Mgmt. LLC,
No. 02 Civ. 0767 (LBS), 2003 WL 22882137 (S .D.N.Y. Dec. 4, 2003) ..........    13, 14

Nissho Iwai Am. Corp. v. Siedler,
No. 94 Civ. 513 (DLC), 1995 WL 555699 (S.D.N.Y. Sept. 18, 1995).............    35

Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.,
484 U.S. 97, 108 S. Ct. 404 (1987) ...................................................................    6

PDK Labs, Inc. v. Friedlander,
103 F.3d 1105 (2d Cir. 1997) .............................................................................    15, 21

Pension Comm. of the Univ. of Montreal Pension Plan v.
Banc of Am. Sec., LLC,
No. 5 Civ. 9016 (SAS), 2006 WL 559811 (S.D.N.Y. Mar. 7, 2006) .................    20-21

Peterson v. Spartan Indus., Inc.,
33 N.Y.2d 463, 354 N.Y.S.2d 905 (1974)...........................................................    28

Pfizer Inc. v. Perrigo Co.,
903 F. Supp. 14 (S.D.N.Y. 1995) .......................................................................    20

Realuyo v. Diaz,
No. 98 Civ. 7684 (JGK), 2000 WL 307407 (S.D.N.Y. Mar. 23, 2000) ............    15

Page(s)

Retail Software Servs., Inc. v. Lashlee,
854 F.2d 18 (2d Cir. 1988) ................................................................. 17

Reynolds Corp. v. Nat'l Operator Servs., Inc.,
73 F. Supp. 2d 299 (W.D.N.Y. 1999)................................................. 17-18

Rich v. Maidstone Fin., Inc.,
No. 98 Civ. 2569 (DAB), 2002 WL 31867724 (S.D.N.Y. Dec. 20, 2002) ........................ 35

Roby v. Corp. of Lloyd's,
996 F.2d 1353 (2d Cir. 1993) ............................................................. 13

Rockwell Int'l Corp. v. Gos Graphic Sys., Inc.,
No. 00 Civ. 8763 (JSM), 2001 WL 293818 (S.D.N.Y. Mar. 27, 2001) ............................ 7, 11

Rolls-Royce Motor Cars, Inc. v. Schudroff,
929 F. Supp. 117 (S.D.N.Y. 1996) ..................................................... 39

Roy Exp. Co. v. Columbia Broad. Sys., Inc.,
672 F.2d 1095 (2d Cir.), cert. denied, 459 U.S. 826, 103 S. Ct. 60 (1982)....................... 41

S.C. Chimexim S.A. v. Velco Interprises, Ltd.,
No. 98 Civ. 0142 (DC), 2004 WL 330233 (S.D.N.Y. Feb. 23, 2004)................................ 28

Sarad, Inc. v. Lawson Software, Inc.,
No. 04 Civ. 5554 (GEL), 2004 WL 2093512 (S.D.N.Y. Sept. 16, 2004) ........................ 10, 11

Savin v. Ranier,
898 F.2d 304 (2d Cir. 1990) ............................................................... 6

Shapiro v. Cantor,
123 F.3d 717 (2d Cir. 1997) ............................................................... 31

Snyder v. Madera Broad., Inc.,
872 F. Supp. 1191 (E.D.N.Y. 1995)..................................................... 16

Stephens v. Am. Risk Mgmt., Inc.,
No. 89 Civ. 2999 (JSM) (KAR), 1993 WL 43494 (S.D.N.Y. Feb. 18, 1993)................... 18

Sterling Nat'l Bank & Trust Co. of N.Y. v. Fidelity Mortgage Investors,
510 F.2d 870 (2d Cir. 1975) ............................................................... 15

Suez Equity Investors, L.P. v. Toronto-Dominion Bank,
250 F.3d 87 (2d Cir. 2001) ................................................................. 35

Page(s)

Sun Forest Corp. v. Shvili,
152 F. Supp. 2d 367 (S.D.N.Y. 2001) ..................................................................................7, 8, 15, 16

Taylor & Jennings, Inc. v. Bellino Bros. Constr. Co.,
106 A.D.2d 779, 483 N.Y.S.2d 813 (3d Dep't 1984) .........................................................    37

Union Carbide Corp. v. Montell N.V.,
944 F. Supp. 1119 (S.D.N.Y. 1996) ....................................................................................    37

United Features Syndicate, Inc. v. Miller Features Syndicate, Inc.,
216 F. Supp. 2d 198 (S.D.N.Y 2002) ..................................................................................    40

Vigilant Ins. Co. of Am. v. Housing Auth. of City of El Paso,
87 N.Y.2d 36, 637 N.Y.S.2d 342 (1995)..............................................................................    33

Wechsler v. Bowman,
285 N.Y. 284 (1941)............................................................................................................    29

Weingrad v. Telepathy, Inc.,
No. 05 Civ. 2024 (MBM), 2005 WL 2990645 (S.D.N.Y. Nov. 7, 2005) ...........................    11, 13

Wm. Passalacqua Builders, Inc. v. Resnick Developers S. Inc.,
933 F.2d 131 (2d Cir. 1991) ...........................................................................................21, 22, 27

Yung v. Lee,
No. 00 Civ. 3965, 2002 WL 31008970 (S.D.N.Y. Sept. 5, 2002)......................................    10

**Other Authorities**

Black's Law Dictionary 1154 (8th ed. 2004) .......................................................................    8

Plaintiffs submit this memorandum in opposition to defendants' motions to dismiss the third amended complaint.[1]

## FACTUAL BACKGROUND

This litigation arises out of Citibank's $700 million plus investment in various Brazilian Portfolio Companies. IEII I, 407 F. Supp. 2d at 484. The agreements governing Citibank's relationship with its chosen managers, Daniel Dantas' Opportunity Group, were negotiated and signed by the parties in New York. See Declaration of Mary Lynn Putney, dated Aug. 4, 2006 ("Putney Decl."), ¶¶ 3-4. These agreements, not surprisingly, provide for the exclusive jurisdiction of New York courts to resolve disputes among the parties. See LPA (Ex. E), § 13.18; Operating Agreement, (the "OA") (Ex. F), § 7.06; id., §7.05 (OA governed by the law of New York). See also Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd., 427 F. Supp. 2d 491, 492 (S.D.N.Y. 2006) ("IEII II"); July 26 Opinion at 2.

Plaintiff IEII, the Delaware entity that is the sole limited partner of the CVC Fund, is the Citibank wholly owned subsidiary through which the investments were made. TAC ¶ 1.[2] Plaintiff CVC Brazil, a subsidiary of IEII and the current sole general partner of the CVC Fund, is a Delaware limited liability company with its principal place of business at Citibank's offices in New York. Id. ¶ 2.

---

[1]    Unless otherwise indicated, capitalized terms have the definitions assigned in International Equity Investments., Inc. v. Opportunity Equity Partners, Ltd., 407 F. Supp. 2d 483 (S.D.N.Y. 2005) ("IEII I") and in plaintiffs' Third Amended Complaint dated Mar. 21, 2006 ("TAC"). All exhibits, unless otherwise indicated, are attached to the Declaration of Rahul Mukhi dated August 4, 2006. The defendants who are moving to dismiss the Third Amended Complaint have submitted two briefs between them (the "Opp. Br." and the "Banco Br."). For the convenience of the Court, the plaintiffs submit a single brief in response to these two briefs.

[2]    For purposes of a motion to dismiss, the Court may assume the allegations, including any jurisdictional allegations, of the complaint to be true. Kernan v. Kurz-Hastings, Inc., 175 F.3d 236, 240 (2d Cir. 1999).

Defendant Dantas founded and, together with the other defendants, controls the CVC Fund's former general partner Opportunity and the Opportunity Group. Id. ¶ 4. In March 2006, plaintiffs joined as additional defendants Arthur Carvalho, Dorio Ferman, Opportunity Prime, Banco Opportunity and Opportunity Fund. These defendants each played a significant role in the course of self-dealing conduct designed to advance their own interests at the expense of the interests of IEII and the CVC Fund. See, e.g., IEII I, 407 F. Supp. 2d at 509; Mar. 17 Order; Oct. 5 Order; IEII II, 427 F. Supp. 2d at 501; July 26 Opinion at 23. In doing so, the defendants acted as a single entity. All defendants share the same premises — identified by the single word "Opportunity" — on the 28th floor of 231 Avenida de Presidente Wilson in Rio de Janeiro, Brazil ("Opportunity Headquarters") and act in concert as a single business entity. See TAC ¶¶ 175, 177; June 30, 2005 Deposition Tr. of Daniel Dantas (the "Dantas Depo.") (Ex. T) at 16:16-17:4. Employees working in the Opportunity Group understand themselves to be employed by "Opportunity" generally. See TAC ¶ 176; June 29, 2005 Deposition Transcript of Maria Amalia Courtrim (Ex. R) at Ex. 5 (business card of Maria Amalia Courtrim identifying her employer as "Opportunity"); June 29, 2005 Deposition Transcript of Veronica Dantas ("V. Dantas Depo.") at 8:5-8:13 (same). Day-to-day business decisions are made at the behest of Dantas, Carvalho and their agents and relatives, who act as representatives of all the members of the Opportunity Group as opposed to some specific Opportunity entity. See TAC ¶¶ 176, 178-188.

Defendants' misconduct includes:

- Abusing their positions obtained solely by dint of the Opportunity Group's fiduciary relationship to plaintiffs to execute undisclosed and unapproved transactions in contravention of plaintiffs' rights and interests. Such transactions include the April 28 Agreements enjoined by this Court last year. Id. ¶¶ 154-167.

2

- Diverting assets belonging to CVC Fund and the Portfolio Companies for the Opportunity Group's benefit, including legal expenses unrelated to the CVC Fund and overpayments to Banco Opportunity under the guise of "underwriting services." Id. ¶¶ 93-98.

- Obstructing IEII's exercise of its unconditional right to remove Opportunity as general partner of the CVC Fund and Opportunity's agents from the management of the Portfolio Companies, including after the Court enjoined such conduct. Mar. 17 Order; TAC ¶¶ 99-117, 168-173.

Arthur Carvalho. Carvalho is Dantas' brother-in-law and a Principal of Opportunity. Id. ¶ 5. In this capacity, Carvalho was a party to the LPA and the OA, both negotiated and executed in New York.[3] See Putney Decl. ¶¶ 3-4. As Principal, Carvalho agreed that he owed fiduciary and other duties to IEI as the limited partner of the CVC Fund. See LPA, § 6.1.5; id. § 6.6.1. Despite these representations —

**REDACTED**                                  — on this motion Carvalho takes the extraordinary position that he is not a fiduciary to plaintiffs. Carvalho also himself executed several of the transactions attacked in this action — including those that designate New York as the jurisdiction for the resolution of the parties' disputes, i.e., the BrT Tag-Along Agreement (Ex. I) and Umbrella Agreement (Ex. J). See TAC ¶¶ 33-88.

Dorio Ferman. Defendant Ferman was also a party to both the LPA and OA. A longtime business associate of Dantas, Ferman signed the agreements in his capacity as an equity holder in Opportunity and control person of several Opportunity entities. These entities include defendants Banco Opportunity and Opportunity Prime, as well as Opportunity Asset Management ("OAM") Inc., the sole director of defendant Opportunity Fund. Declaration of

---

[3]   On December 26, 1997, Dantas, Carvalho and Ferman (along with the other signatories to the LPA) also executed guaranties whereby each of them individually guarantied to IEI that if Opportunity failed to perform or discharge certain duties to the limited partner under the LPA, they would personally perform and discharge those obligations. See Guaranties dated Dec. 26, 1997 (Exs. B, C). The Guaranties provide that they are governed by Cayman law (like the LPA itself, see LPA, § 13.7) but do not contain a separate forum selection clause. See Exs. B, C.

3

Veronica Dantas, dated June 9, 2006 ("V. Dantas Decl."), ¶ 1. Despite the fact that Veronica

Dantas has now submitted a sworn declaration stating that Ferman is not a director of

Opportunity Prime (the shell entity designated to be the recipient for the bulk of the

consideration paid under the April 28 Agreements), defendants previously admitted otherwise.

Compare Defs.' Amended Answers and Objections to Pls.' First Set of Interrogatories, dated

Dec. 8, 2005 (Ex. HH) (listing Dantas, Veronica Dantas and Ferman as the directors of

Opportunity Prime) with V. Dantas Decl. ¶ 11 ("Opportunity Prime's sole directors are Veronica

Dantas and Daniel Dantas"). From his controlling positions within the Opportunity Group,

Ferman — who sits on the 28th floor of Opportunity Headquarters with the rest of Dantas'

cohorts — participated in the improper diversion of plaintiffs' assets to himself, Banco

Opportunity and others, TAC ¶¶ 255-262, and executed the BrT Tag-Along Agreement,

Umbrella Agreement, AFAC Agreement and April 28 Agreements, id. ¶¶ 75-78, 93-98, 134,

151, 160.

        Banco Opportunity. Defendant Banco Opportunity is Opportunity's corporate

alter ego organized under the laws of Brazil with its registered offices and principal place of

business located at the Opportunity Headquarters. Id. ¶ 8. Opportunity and Banco Opportunity

share computer servers. Declaration of Dorio Ferman dated June 7, 2006 ("Ferman Decl."), ¶

19. Ferman, Carvalho and Veronica Dantas, act on behalf of Banco Opportunity, and Carvalho

has acted as a director of Banco Opportunity. See Exs. X, Y. Banco Opportunity is also a party

to the December 1997 License Agreement (Ex. D) (which also designates New York as a

jurisdiction for the resolution of disputes) that permitted Opportunity to use the "CVC" name and

mark, including as part of the name of the Onshore Fund. Opportunity and its Principals further

utilized Banco Opportunity for the improper diversion of plaintiffs' assets (including

4

unwarranted "underwriting" fees to the company itself) and to execute the Umbrella Agreement and April 28 Agreements. Id. ¶¶ 75-78, 97-98, 160.

Opportunity Fund. Defendant Opportunity Fund is a Cayman entity founded by Dantas, with its principal place of business at Opportunity Headquarters. Dantas is the controlling shareholder in Opportunity Fund and Veronica Dantas and Ferman also act on behalf of the company including through their directorships of OAM Inc. Defs.' Amended Answers and Objections to Pls.' First Set of Interrogatories, dated Dec. 8, 2005 (Ex. HH); V. Dantas Decl. ¶ 1. At Opportunity's direction, Opportunity Fund participated in the challenged Highlake Transaction (TAC ¶¶ 33-51), BrT Tag-Along Agreement (id. ¶¶ 63-74), Umbrella Agreement (id. ¶¶, 75-78) the Alcatel Transaction (id. ¶¶ 89-92), Highlake Tag-Along Agreement (id. ¶ 123), Tele Norte Leste Tag-Along Agreement (id. ¶¶ 137-140), Zain Tag-Along Agreement (id. ¶¶ 141-146), AFAC Agreement (id. ¶¶ 147-153) and April 28 Agreements (id. ¶ 160).

Opportunity Prime. Defendant Opportunity Prime is organized under the laws of the British Virgin Islands, though it has no employees there or anywhere else. Id. ¶ 9; V. Dantas Decl. ¶ 11. Dantas, Veronica Dantas and Dorio Ferman are the sole directors of the company, see Ex. HH, which was used by the defendants as the special purpose vehicle for implementation of the improper April 28 Agreements. TAC ¶ 160; IEII I, 407 F. Supp. 2d at 507.

## ARGUMENT

### POINT I

### THIS COURT HAS PERSONAL JURISDICTION OVER ALL OF THE DEFENDANTS[4]

To defeat the motions to dismiss for lack of personal jurisdiction, the plaintiffs'

burden is limited to making good faith allegations that, when construed liberally, are legally

sufficient to support jurisdiction. See In re Parmalat Sec. Litig., 414 F. Supp. 2d 428, 441

(S.D.N.Y. 2006) (Kaplan, J.) (citing Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194

(2d Cir. 1990)); Greenlight Capital, Inc. v. GreenLight (Switzerland) S.A., No. 04 Civ. 3136

(HB), 2005 WL 13682, at *2 (S.D.N.Y. Jan. 3, 2005) (courts will construe a plaintiff's

"'jurisdictional allegations liberally and take as true uncontroverted factual allegations'")

(citation omitted). The presumption that a plaintiff's jurisdictional facts are true is not disturbed

unless the plaintiff has received jurisdictional discovery and a "full-blown" hearing on the

merits. See, e.g., Greenlight, 2005 WL 13682, at *2.

Here, because neither jurisdictional discovery nor a corresponding hearing on the

merits has taken place, the allegations in the Complaint must be accepted as true and liberally

construed to support jurisdiction. Defendants argue that, because some defendants in this case

have produced documents and given limited depositions, it is "especially true here" that plaintiffs

cannot rely on conclusory allegations. See Opp. Br. at 3 n.1. This argument, relegated to a

footnote even by defendants, is makeweight. First, plaintiffs do not rely on conclusory

allegations, but rather on specific facts and agreements demonstrating that the defendants are

---

[4]    In a diversity case, personal jurisdiction is determined by the law of the forum in which the court sits. See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 108, 108 S. Ct. 404, 412 (1987); Arrowsmith v. United Press Int'l, 320 F.2d 219, 223 (2d Cir. 1963) (en banc); Savin v. Ranier, 898 F.2d 304, 306 (2d Cir. 1990).

subject to this Court's jurisdiction. Second, none of the prior discovery in this case was

jurisdictional discovery and the few, Court-ordered expedited depositions that occurred last year

(months before these new defendants were named and made their motion) was specifically

limited to six improper agreements entered into by defendants, see Apr. 28, 2005 Order.

Accordingly, defendants' suggestions, see Banco Br. at 7, that plaintiffs labor under a heightened

burden is simply incorrect. See Marine Midland Bank, N.A. v Miller, 664 F.2d 899, 904 (2d Cir.

1981) (no more than good faith allegations of jurisdiction required unless plaintiff has received

jurisdictional discovery with a hearing on the merits). In any event, the limited information

revealed in the previous discovery overwhelmingly supports plaintiffs' jurisdictional allegations.

A.    **The Court Has Jurisdiction Over All Defendants Under The Forum Selection**
      **Clauses In The LPA And OA**

1.    **Carvalho, Ferman And Banco Opportunity Are Subject To Valid Forum**
      **Selection Clauses**

Contractual clauses providing for consent to personal jurisdiction and venue "are

prima facie valid and should be enforced unless enforcement is shown by the resisting party to be

'unreasonable' under the circumstances." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10,

92 S. Ct. 1907, 1913 (1972). The Second Circuit routinely gives significant deference to forum

selection clauses, particularly where "the choice of that forum was made in an arms-length

negotiation by experienced and sophisticated businessmen." Rockwell Int'l Corp. v. Gos

Graphic Sys., Inc., No. 00 Civ. 8763 (JSM), 2001 WL 293818, at *2 (S.D.N.Y. Mar. 27, 2001)

(quotation marks and citation omitted); Sun Forest Corp. v. Shvili, 152 F. Supp. 2d 367, 380

(S.D.N.Y. 2001) ("In attempting to invalidate the forum-selection clauses, the [defendants] must

overcome a substantial presumption in favor of their enforcement . . . . The Second Circuit,

7

moreover, has a 'strong policy' in favor of giving effect to such a clause.") (internal citations omitted).

Here, the clauses in the LPA and OA bind the parties to litigate in New York. See IEII I, 407 F. Supp. 2d at 498 ("[T]hese parties agreed to the exclusive jurisdiction of state and federal courts in New York over any action or proceeding relating to the LPA. No one disputes that this is such an action."); IEII II, 427 F. Supp. 2d at 492 ("Notably, Dantas and Opportunity agreed with Citigroup that any disputes between them in regard to the CVC Fund would be resolved exclusively by litigation in New York."); July 26 Opinion at 2. See also Sun Forest, 152 F. Supp. 2d at 382 (S.D.N.Y. 2001) ("'a signatory to a contract is presumed to have read, understood and agreed to be bound by all terms, including the forum selection clauses, in the documents he or she signed'") (quoting Orix Credit Alliance, Inc. v. Brown, No. 93 Civ. 1019, 1994 WL 392240, at *4 (S.D.N.Y. July 27, 1994)). Those parties include Carvalho and Ferman — each of whom signed both the LPA and OA — and Banco Opportunity, which signed the OA.

Carvalho and Ferman argue that they are not "parties" to the LPA. See Opp. Br. at 4-5; Banco Br. at 9. The parties to the LPA, obviously includes its signatories like Carvalho and Ferman and nothing in the agreement provides otherwise. See Black's Law Dictionary 1154 (8th ed. 2004) (defining "party" as "One who takes part in a transaction."); Goodrich & Sherwood Co. v. Goodrich, No. 83 Civ. 0857 (RWS), 1985 WL 2883, at *1 (S.D.N.Y. Oct. 5, 1985) (rejecting argument that a principal and signatory was not a "party" to a partnership agreement merely because he was not defined as such in the introductory paragraph). Indeed the sole sentence on the signature page where Carvalho and Ferman signed above their own names states that "the parties hereto" are executing the Agreement.[5] LPA (Ex. E) at 89; It's Entm't,

---

[5]      Given Carvalho's and Ferman's signatures as individuals (the General Partner was signed for separately) the Court is not faced with the situation where individual liability is being imposed on

8

<u>Div. of I.S. Enters., Inc. v. Choice Entm't, Inc.</u>, No. 90 Civ. 0653 (RWS), 1991 WL 285615, at

*6 (S.D.N.Y. Dec. 31, 1991) (lack of any agency designation under individual signature line

indicative of personal liability and party status).  Opportunity's Danielle Silbergleid who signed

for Opportunity and Dantas, Carvalho and Ferman, specifically swore that she was signing "for,

and on behalf of the persons listed on Schedule 1." (Ex. E) (Schedule I lists Opportunity, as well

as Dantas, Carvalho and Ferman); Exs. JJ, KK (individual powers of attorneys by Carvalho and

Ferman).[6]  Given the fact that a single authorized agent may bind a Cayman corporation (like

Opportunity) to a contract, <u>see</u> Declaration of Christopher John Brougham, Q.C., dated August 4,

2006 ("Brougham Decl."), ¶ 9 (citing Cayman Companies Law § 81.(1)(b)), there was no need

whatever for the seven individuals to sign on as well, other than to implement the intent that they

personally be parties to the agreement.

    Having individually signed these negotiated documents, these sophisticated

parties should not be allowed to escape the bargain they struck.  <u>See</u> <u>M/S Bremen</u>, 407 U.S. at

---

an individual who signed once only for a disclosed principal. But even in that situation, the
Second Circuit has "never" required two signatures for there to be personal liability. <u>Mason
Tenders Dist. Council Welfare Fund v. Thomsen Constr. Co.</u>, 301 F.3d 50, 54 (2d Cir. 2002); <u>see
also</u> <u>Cement & Concrete Workers Dist. Council Welfare Fund v. Lollo</u>, 35 F.3d 29, 35 (2d Cir.
1994) (holding signatory officer individually liable without separate signature of the officer in his
personal capacity based on "clear and explicit evidence of the [] intention to substitute or
superadd [] personal liability" including presence of signatory's name in agreement, terms of
contract and signatory's role in company) (internal quotation marks and citations omitted);
<u>Lehman Bros., Inc. v. Tutelar CIA Financiera, S.A.</u>, No. 95 Civ. 3772 (DLC), 1997 WL 403463
(S.D.N.Y. July 17, 1997) (denying summary judgment where contract ambiguous and issue of
fact as to whether signatories personally bound). Here, of course, Carvalho and Ferman signed
the LPA in their individual capacities. Moreover, each of the signatories here executed a
contemporaneous guaranty under which they agreed to be individually liable for certain
obligations of Opportunity under the LPA. <u>See</u> Ex. E.  <u>See, e.g.</u>, <u>Days Inn of Am., Inc. v. L.A.,
Inc.</u>, No. 97 Civ. 5476 (JGK), 1998 WL 765182, at *4 (S.D.N.Y. Nov. 3, 1998) (where an
individual guarantees an agreement the obligations include the agreement's forum selection
clause); <u>Ameritrust Co. Nat'l Ass'n v. Chanslor</u>, 803 F. Supp. 893, 896 (S.D.N.Y. 1992).

[6] By contrast, Mary Lynn Putney signed the LPA solely as "Vice President, Citibank N.A." and no
individual for Citibank otherwise signed the agreement. <u>See</u> <u>It's Entm't</u>, 1991 WL 285615, at *4
(citing cases where individual not bound when signature line identifies principal and signatory's
role as agent).

18, 92 S. Ct. at 1917 ("[I]t should be incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court. Absent that, there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to his bargain.").[7]

Carvalho, Ferman and Banco Opportunity are also subject to jurisdiction due to the forum selection clause in the OA. The OA provides for the jurisdiction of this Court for any disputes arising out of the agreement "or the transactions contemplated hereby." OA, § 7.06 (emphasis added). Plaintiffs' claims all arise out of transactions "contemplated" by the OA — i.e., investments in Portfolio Companies intended to be made on a side-by-side basis with the "objective of producing superior rates of return" (OA, preamble) and which were not to serve as occasions for defendants' tortious conduct. While defendants do not deny that they are parties to the OA or dispute jurisdiction in connection with plaintiffs' breach of contract claim, see Banco Br. at 10 n.6; Opp. Br. at 9, they miscast the remaining claims against them as not "contemplated" by the OA's forum selection clause, Banco Br. at 9-12; Opp. Br. at 6-8. "But creative characterizations such as these cannot defeat a valid and binding forum selection clause." Sarad, Inc. v. Lawson Software, Inc., No. 04 Civ. 5554 (GEL), 2004 WL 2093512, at *2 (S.D.N.Y. Sept. 16, 2004).

---

[7]    The caselaw cited by defendants does not support their argument that they are not bound by the LPA's forum selection clause. See Opp. Br.at 5-6; Banco Br. at 8-9. In Mellon Stuart Co. v. N. River Ins. Co., the relevant three party agreement specifically provided that the forum selection clause only applied only to two of the parties and, in any event, the court held that the other party could properly bring suit in that forum. No. 88 Civ. 4847 (JFK), 1990 WL 13168, at *4 (S.D.N.Y. Feb. 8, 1990). None of the defendants' other authorities involves the situation where actual signatories seek to avoid the forum selection clause to which they agreed. See, e.g., Huff v. Chandris SA, No. 93 Civ. 6685 (SS), 1994 WL 414467, at **1-2 (S.D.N.Y. Aug. 8, 1994); Indian Harbor Ins. Co. v. Factory Mut. Ins. Co., 419 F. Supp. 2d 395, 406 (S.D.N.Y. 2005); Yung v. Lee, No. 00 Civ. 3965, 2002 WL 31008970, at *2 n.2 (S.D.N.Y. Sept. 5, 2002).

Having committed tortious acts in connection with contemplated Fund transactions, defendants are subject to the reach of the OA's forum selection clause. See, e.g., TAC ¶ 253 (alleging, inter alia, April 28 Agreements and BrT-Along Agreement violated the OA's side-by-side requirements); Weingard v. Telepathy, Inc., No. 05 Civ. 2024 (MBM), 2005 WL 2990645, at *4 (S.D.N.Y. Nov. 7, 2005) (contractual forum selection clause applicable to all "claims [that] grow out of the contractual relationship, or if 'the gist' of those claims is a breach of that relationship"); Sarad, 2004 WL 2093512, at *2; Borumand v. Assar, 192 F. Supp. 2d 45, 52 (W.D.N.Y. 2001) ("'[t]he district court, having acquired personal jurisdiction over defendant, has power to determine all of the claims asserted in the complaint'" where they arise from the same nucleus of operative facts) (quoting Hargrave v. Oki Nursery, Inc., 646 F.2d 716, 721 (2d Cir. 1980)).

The very cases cited in defendants' brief confirm the inappropriateness of their crabbed reading of the OA forum selection clause as conferring jurisdiction over plaintiffs' contract claims but not the parallel tort claims. See, e.g., Banco Br. at 11 (citing Brennen v. Phyto-Riker Pharm., Ltd., No. 01 Civ. 11815, 2002 WL 1349742, at *4 (S.D.N.Y. June 20, 2002) (contractual forum selection clause equally applicable to parallel economic tort claims where one "common thread" was the rights and duties under the contractual relationship); Rockwell, 2001 WL 293818, at *2 (copyright infringement claims covered by forum selection clause in parties' license agreement)). Indeed in Direct Mail Production Services Ltd. v. MBNA Corp., Banco Br. at 11, Opp. Br. at 7, a license agreement that contained a forum selection clause providing jurisdiction for simply, "THIS Agreement," — language significantly narrower than the OA's forum provision (i.e., "arising out of or based upon this Agreement or transactions contemplated hereby," OA, § 7.06) — was held to cover copyright infringement and economic

11

tort claims even in the absence of an underlying breach of contract claim. Direct Mail, No. 99 Civ. 10550 (SHS), 2000 WL 1277597, at **5-6 (S.D.N.Y. Sept. 7, 2000). And the cases cited by defendants as limiting the reach of a forum selection clause involved contractual language, and facts, simply inapposite here. Banco Br. at 11-12 (citing Gen. Envtl. Sci. Corp. v. Horsfall, 753 F. Supp. 664, 668 (N.D. Ohio 1990) (forum selection clause did not apply where contained in only one of many agreements between the parties and the plaintiffs did not bring any claims under or related to that contract); Berrett v. Life Ins. Co. of the Sw., 623 F. Supp. 946, 949 (D. Utah 1985) (forum selection clause did not apply to tort claims where such allegations were "unrelated to the interpretation of the [] agreement which caused direct damage to plaintiffs' business")); Opp. Br. at 6 (citing Armco, Inc. v. N. Atl. Ins. Co., 68 F. Supp. 2d 330, 339 (S.D.N.Y. 1999) (forum selection clause did not apply to pre-contractual tort claims)).[8]

### 2.    All Defendants Are Bound As "Closely Related" Parties

All defendants (including Opportunity Fund and Opportunity Prime) are bound by the forum selection clauses in the LPA and OA, because they are parties "closely related" to Opportunity, the signing general partner. See Int'l Private Satellite Partners, L.P. v. Lucky Cat Ltd., 975 F. Supp. 483, 485-86 (W.D.N.Y. 1997) ("It is well established that 'a range of transaction participants, parties and non-parties, should benefit from and be subject to forum

---

[8]    Carvalho, Ferman, Banco Opportunity and Opportunity Fund are also each parties to forum selection clauses contained in additional agreements challenged in the TAC. All four of these defendants executed the Umbrella Agreement, which provides that the law of New York shall govern the agreement and New York courts will have jurisdiction over any disputes. See Ex. J; TAC ¶¶ 63; 76. Ferman and Opportunity Fund are also parties to the BrT Tagalong Agreement, which contains a New York forum selection clause of its own. See Ex. I. Finally, the Highlake Promissory Note, the terms to which Carvalho refused to disclose to plaintiffs, also provides choice of law and forum in favor of New York. See Ex. DD. As plaintiffs' claims against defendants include the relief from these same agreements, see, e.g., TAC ¶¶ 194, 210, 221-228, 278, their forum selection clauses form the bases, on top of the LPA's and OA's unequivocal submissions, for this Court's jurisdiction. See also Point I.B.1, infra (entering into multiple contracts designating New York as jurisdiction supports 302(a) long arm jurisdiction).

selection clauses.'") (quoting <u>Graham Tech. Solutions, Inc. v. Thinking Pictures, Inc.</u>, 949 F.

Supp. 1427, 1434 (N.D. Cal. 1997)); <u>Nanopierce Techs., Inc. v. Southbridge Capital Mgmt.</u>

<u>LLC</u>, No. 02 Civ. 0767 (LBS), 2003 WL 22882137, at *5 (S .D.N.Y. Dec. 4, 2003) ("'In order to

bind a non-party to a forum selection clause, the party must be 'closely related' to the dispute

such that it becomes 'foreseeable' that it will be bound.'") (quoting <u>Lipcom v. Underwriters at</u>

<u>Lloyd's, London</u>, 148 F.3d 1285, 1299 (11th Cir.1998)).  A "non-party is closely related to a

dispute if its interests are completely derivative of and directly related to, if not predicated upon

the signatory party's interests or conduct."  <u>Weingard</u>, 2005 WL 2990645, at *5 (internal

quotations and citation omitted).  Here, the defendants' interests are derivative of Dantas and

Opportunity's relationship with the plaintiffs and each of these closely related defendants

participated in the same course of misconduct designed to enrich defendants at plaintiff's

expense.  <u>See</u> <u>Roby v. Corp. of Lloyd's</u>, 996 F.2d 1353, 1360 (2d Cir. 1993) ("complaints

against the individual Chairs are completely dependent on the complaints against the [principals]

. . . [and] arise [ ] out of the same misconduct charged against the [principals] . . .[and] if the

scope of the [principals] agreements include [] the [principals'] misconduct, it necessarily

includes the Chairs' derivative misconduct"); <u>Weingard</u>, 2005 WL 2990645, at *5 (all

defendants closely related where plaintiff alleges they participated in a common scheme of

misconduct).[9]

---

[9]     <u>See, e.g.</u>, TAC ¶¶ 33-88 (Carvalho's participation in, <u>inter alia</u>, the Highlake Transaction,
Telemig and Amazonia auctions, BrT Tag-Along Agreement, Umbrella Agreement and Santos
Transaction); <u>id.</u> ¶¶ 75-78, 93-98, 134, 151, 180 (Ferman and Banco Opportunity's participation
in the improper diversion of plaintiffs' assets, BrT Tag-Along Agreement, Umbrella Agreement,
AFAC Agreement and April 28 Agreements); <u>id.</u> ¶¶ 33-51, 63-78, 89-92, 123, 137-153, 180
(Opportunity Fund's participation in the Highlake Transaction, BrT Tag-Along Agreement,
Umbrella Agreement, the Alcatel Transaction, Highlake Tag-Along Agreement, Tele Norte Leste
Tag-Along Agreement, Zain Tag-Along Agreement, AFAC Agreement and April 28
Agreements); <u>id.</u> ¶ 160 (Opportunity Prime's participation in the April 28 Agreements).

Indeed, it was certainly "foreseeable" for the Principals and affiliates of the

Opportunity Group that they would each be bound by the forum provisions that the Principals

themselves signed.  See Nanopierce Techs., 2003 WL 22882137, at *5 (foreseeable that

corporate officer would be bound by forum selection clause entered into by the corporation);

Direct Mail, 2000 WL 1277597, at *5 (foreseeable that related companies bound by forum

selection clause entered into by one affiliate).  Cf. Capital Venture Int'l v. Network Commerce,

Inc., No. 01 Civ. 4390 (JSM), 2002 WL 417246, at *2 (S.D.N.Y. Mar. 15, 2002) (not foreseeable

that individual defendants would be bound when they did not sign the underlying agreement).

## B.    The Court Also Has Jurisdiction Over All Defendants Under The New York Long Arm Statute

### 1.    302(a)(1)

In addition to being bound by explicit agreement to litigate disputes in this

forum, defendants here are also reachable under the New York long-arm statute.[10]  CPLR

302(a)(1) provides jurisdiction over a person or agent that "transacts any business within the

state."  N.Y. CPLR 302(a)(1) (McKinney 2001).  Here, the "totality of the circumstances"

surrounding defendant's in-state activity confirms that they "transacted business" within the

meaning of Section 302(a)(1).  Sterling Nat'l Bank & Trust Co. of N.Y. v. Fidelity Mortgage

Investors, 510 F.2d 870, 873 (2d Cir. 1975); First City Fed. Sav. Bank v. Dennis, 680 F. Supp.

579, 583 (S.D.N.Y. 1988).  The factors that govern this standard include: (i) whether the

---

[10]    Under New York law, the Court's two-step inquiry involves consideration of the state's long-arm provision and federal due process requirements.  See CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 363 (2d Cir. 1986).  Carvalho, Opportunity Fund and Opportunity Prime do not claim that the assertion of jurisdiction over them would violate due process.  And indeed it would be farfetched for Carvalho to argue that his contacts with this forum are random, considering that he has submitted no fewer than 8 declarations in this action and given live testimony at the June 7, 2005 contempt hearing.  See Hartford Fire Ins. Co. v. Evergreen Org., Inc., 410 F. Supp. 2d 180, 183-184 (S.D.N.Y. 2006) (Kaplan, J.) (defendants waived objection to personal jurisdiction where they had appeared voluntarily in opposition to provisional relief).

14

defendant has an ongoing contractual relationship with a New York corporation; (ii) whether the contract was signed in New York; (iii) whether defendants have traveled to New York to negotiate with parties to the contract; and (iv) what the choice of law clause in the contract provides. See Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 29 (2d Cir. 1996).

   Here, each of Carvalho, Ferman and Banco Opportunity are subject to 302(a)(1) long-arm jurisdiction for the simple reason that they each sent their agent, Danielle Silbergleid, into New York for the purpose of signing on their behalf the operative legal documents for a $700 million plus investment with Citibank, a New York entity. LPA (Ex. E); Carvalho and Ferman Powers of Attorney (Exs. JJ, KK); PDK Labs., Inc. v. Friedlander, 103 F.3d 1105, 1109 (2d Cir. 1997) (long-arm jurisdiction proper over foreign persons who solicit investment in New York); Sun Forest, 152 F. Supp. 2d at 384 ("The act of borrowing money from a New York-based entity can, when considered in combination with other contacts, give rise to jurisdiction under CPLR § 302(a)(1)"); Realuyo v. Diaz, No. 98 Civ. 7684 (JGK), 2000 WL 307407, at *5 (S.D.N.Y. Mar. 23, 2000) (soliciting and signing agreement in New York sufficient contacts for jurisdiction under CPLR 302(a)(1)). Dantas and Carvalho's connections with the State continued throughout the life of the relationship between Opportunity and Citibank, solidifying the center of gravity of the relationship as in New York.[11] Putney Decl. ¶ 5; Ex. EE (emails concerning Daniel Dantas' meetings in New York with Citibank). See Braun v. Giarratano, No. 00 Civ. 1767 (HGM/GJD), 2002 WL 1916368, at *3 (N.D.N.Y. July 30, 2002) (defendants

---

[11]  The activities in New York of Dantas are sufficient to create jurisdiction over Opportunity Fund and Opportunity Prime, both of which Dantas is a controlling director. V. Dantas Decl. ¶¶ 8, 11; see Mega Tech Int'l Corp. v. Al-Saghyir Establishment, No. 96 Civ. 8711 (LBS), 1999 WL 269896, at *5 (S.D.N.Y. May 3, 1999) ("There is a significant body of authority from within this Circuit indicating that the presence of a corporate officer within New York for purposes of negotiating and signing a contract is sufficient to create jurisdiction under CPLR § 302(a)(1) when the causes of action asserted relate to breach of that agreement") (citing cases).

clearly transacted business in New York where they were officers of a corporation which had an on-going contractual relationship with plaintiff New York corporation and defendants made periodic visits to New York for meetings related to the transaction).

Indeed, apart from executing the LPA and OA, all defendants signed onto other New York forum selection clauses including under the Umbrella Agreement (Ex. J) and BrT Tag-Along Agreement (Ex. I), further demonstrating the defendants' nexus with the state. See ESI, Inc. v. Coastal Corp., 61 F. Supp. 2d 35, 57 (S.D.N.Y. 1999) (New York forum selection clauses in multiple agreements supports nexus with New York). The OA and the Umbrella Agreement provide further that New York law will govern the agreements. See OA (Ex. F), § 7.05; Umbrella Agreement (Ex. J), ¶ 17. See Sun Forest, 152 F. Supp. 2d at 384 ("acquiescence in having this forum's law of contracts govern any action arising out [an agreement] is also a significant contact[] with the state for jurisdictional purposes") (internal citation and quotation marks omitted).

If these contacts were somehow insufficient, then the acts in New York conducted on behalf of Opportunity, specifically by Daniel Dantas himself, are sufficient to create jurisdiction over "a corporate agent who has not physically entered New York."[12] Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 199 (1988). See also Champion Motor Group, Inc. v. Visone Corvette of Mass., Inc., 992 F. Supp. 203, 206 (E.D.N.Y. 1998)

---

[12]     The Opportunity Group's solicitation included, inter alia, the drafting of private placement memorandum (Ex. W) and the negotiation of a commitment letter (Ex A). The private placement memo was directed at investors worldwide, including throughout the United States. See Ex. W at ii. See Chiat/Day Inc. Adver. v. 800-Flowers, Ltd., No. 85 Civ. 0408 (CBM), 1985 WL 1215, at *4 (S.D.N.Y. May 7, 1985) (defendants transacted business for purposes of CPLR 302(a) in New York where defendants' prospectus indicated U.S.-wide campaign); Snyder v. Madera Broad., Inc., 872 F.Supp. 1191, 1195 (E.D.N.Y. 1995) (defendants transacted business in New York where prospectus solicited funds from New York plaintiffs). The commitment letter was signed by Citibank in New York and contained New York choice of law and forum selection clauses. See Ex. A at ¶ 6; ESI, Inc., 61 F. Supp. 2d at 57.

("Although jurisdiction over a corporation is normally premised upon jurisdiction over an individual defendant through agency principles, the opposite is also possible: a corporation can act as the agent of a corporate officer so that its activities here can subject the officer to jurisdiction under CPLR 302(a)(1)."). Indeed, jurisdiction exists where the principal "engaged in purposeful activities within this State in relation to [the] transaction for the benefit of and with the knowledge and consent of the [individual] and . . . [the individual] exercised some control over [principal] in the matter." Kreutter, 71 N.Y.2d at 467, 527 N.Y.S.2d at 199.

For purposes of CPLR 302(a)(1), plaintiffs need not establish a formal agency or alter ego relationship between the defendants and Opportunity and Dantas, but rather that the out-of-state corporate officers were "primary actor[s] in the transaction in New York" that gave rise to the litigation, and not merely "some corporate employee[s] . . . who played no part in" it. Retail Software Servs., Inc. v. Lashlee, 854 F.2d 18, 22 (2d Cir. 1988) (long arm jurisdiction over corporate employee who acted outside state where corporation transacted in New York on employee's behalf); see also Kinetic Instruments, Inc. v. Lares, 802 F. Supp. 976, 984 (S.D.N.Y. 1992) (same). Not only do defendants qualify "primary actors" based on their status as intended beneficiaries (Carvalho of course a Co-Principal of Opportunity with Dantas) but also pursuant to their individual roles in obtaining ill-gotten gains from the plaintiffs. See Editorial Musical Latino Americana, S.A. v. Mar Int'l Records, Inc., 829 F. Supp. 62, 66 (S.D.N.Y. 1993) (persons having a financial interest in the company and the ability to supervise or control an infringing activity in New York are subject to personal jurisdiction); Reynolds Corp. v. Nat'l Operator Servs., Inc., 73 F. Supp. 2d 299, 304 (W.D.N.Y. 1999) (defendant corporate officers were primary actors in the New York transaction where alleged they participated in fraud in connection with the transaction).

17

All defendants, including Opportunity Fund and Opportunity Prime, sought to gain from plaintiffs' investment. See, e.g., In re Sumitomo Copper Litig., 120 F. Supp. 2d 328, 336 (S.D.N.Y. 2000) (jurisdiction under CPLR 302(a) over defendant corporate officers and affiliates where all defendants engaged in activities and received benefits in connection with a business venture created by transaction in New York); Stephens v. Am. Risk Mgmt., Inc., No. 89 Civ. 2999 (JSM) (KAR), 1993 WL 43494, at *12 (S.D.N.Y. Feb. 18, 1993); cf. Opp. Br. at 10 (citing Merck & Co. Inc. v. Mediplan Health Consulting, Inc., 425 F. Supp. 2d 402, 420 (S.D.N.Y. 2006) (no personal jurisdiction over corporate officer where plaintiffs did not allege he was a primary actor in the matters in question)). Indeed, given the defendants' positions within the Opportunity Group and the size of the Citibank relationship, it cannot be seriously disputed that all defendants were beneficiaries of Citibank's investment. Basquiat v. Kemper Snowboards, No. 96 Civ. 0185 (LAP), 1997 WL 527891, at *3 (S.D.N.Y. Aug. 25, 1997) (high ranking positions within company necessarily implies that defendants will derive financial benefits from relatively significant transaction).

2.      302(a)(3)

The Court also has jurisdiction over the defendants pursuant to CPLR 302(a)(3) (McKinney 2001), which states:

> A court may exercise personal jurisdiction over any non-domiciliary, . . . , who in person or through an agent: . . . (3) commits a tortious act without the state causing injury to person or property within the state . . . if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

In the case of fraud or breach of fiduciary duty committed outside of New York, "the critical question is thus where the first effect of the tort was located that ultimately produced

18

the final economic injury." Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d

779, 792 (2d Cir. 1999) (situs of financial losses was New York based on tortious conduct

outside of the forum where the "original event" was a New York corporation's contribution of

investment to the transaction); Mega Tech Int'l Corp., 1999 WL 269896 (same). The effect of

the unlawful conduct at issue here was in New York, home of Citibank and where plaintiffs

relied on defendants' misrepresentations and omissions concerning their actions in connection

with the CVC Fund. See, e.g., TAC ¶¶ 36-39, 44-47 (misrepresentations and omissions made to

Putney in New York concerning Highlake); Declaration of Veronica Dantas, dated Mar. 22,

2006, ¶ 17 (Umbrella Agreement videoconference with Citibank's representatives in New York).

See Hargrave v. Oki Nursery, Inc., 636 F.2d 897, 900 (2d Cir. 1980) (the tortious injury "was

immediately felt in New York where plaintiffs were domiciled and doing business, where they

were located when they received the misrepresentations"). And some of the defendants'

misconduct took place in New York as well. See V. Dantas Depo. at 29:15-29:18 (Daniel and

Veronica Dantas entering Highlake Tag-Along Agreement in New York).[13]

       The "fiduciary shield" doctrine is unavailable to avoid jurisdiction over these

defendants under CPLR 302(a)(3). Madison Nat'l Bank v. NMM Realty Dev. Bank, No. 86 Civ.

5115 (PNL), 1990 WL 138952, at *1 (S.D.N.Y. Sept. 19, 1990). The defendants reasonably

expected to have consequences in New York and derive substantial revenue from international

commerce as evidenced by their: (i) operation of a global investment fund and finance business;

(ii) solicitation of plaintiffs' business in New York and other investors worldwide including

through a private placement memorandum; and (iii) regularly entering agreements that provide

---

[13]    These facts would also give the Court personal jurisdiction over the defendants under CPLR
302(a)(2). See, e.g., Fashion Fragrance & Cosmetics v. Croddick, No. 02 Civ. 6294 (WK) 2003
WL 342273, at *6 (S.D.N.Y. Feb. 13, 2003)

for the jurisdiction of New York courts and law.  See Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC, No. 5 Civ. 9016 (SAS), 2006 WL 559811, at *7 (S.D.N.Y. Mar. 7, 2006) (jurisdiction under CPLR 302(a)(3) where corporation was "doing business internationally, maintaining direct contacts with New York, and selecting New York as the forum for the resolution of all disputes regarding the funds"). Moreover, defendants here specifically directed their course of misconduct towards Citibank in New York, reasonably expecting the effects to be felt in this state. Id. (foreign fund reasonably expected consequences in New York where it disseminated the alleged fraudulent statements directly to New York investors, who used these statements to decide whether to maintain their investments in the funds.).

     **3.    Due Process**

         The numerous New York contacts outlined above belie any due process concerns that the defendants are being haled into this forum "solely as a result of random, fortuitous, or attenuated contacts." Burger King v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183 (1985) (citations omitted). See, e.g., Global Intellicom, Inc. v. Thomson Kernaghan & Co., No. 99 Civ. 0342 (DLC), 1999 WL 544708, at *19 (S.D.N.Y. July 27, 1999) (due process satisfied where agent executed New York transactions on behalf of principal and where some of those agreements consented to personal jurisdiction in New York); Pfizer Inc. v. Perrigo Co., 903 F. Supp. 14, 16 (S.D.N.Y. 1995) (does not offend Fourteenth Amendment to exercise New York long-arm jurisdiction under over affiliate of corporate entity that transacted business in New York); Pension Comm. of the Univ. of Montreal, 2006 WL 559811, at *7. By soliciting and managing Citibank's investments, defendants clearly availed themselves "of the privileges of conducting business [in New York] so as to reasonably expect to be subject to suit here." PDK

Labs., 103 F.3d at 1110-11.  Indeed, Carvalho and Ferman designated agents for service of

process in New York pursuant to the OA, making any claims that their amenability to

jurisdiction in New York was unforeseeable misguided, to say the least.  See Ex. G.

**C.     Opportunity Fund, Banco Opportunity and Opportunity Prime Are Subject To
        Jurisdiction As The Alter Egos Of Opportunity, Dantas And Carvalho**

             As set forth above, Opportunity, Dantas and Carvalho all availed themselves of

the jurisdiction of this Court and accordingly this Court has jurisdiction over any of the

defendants' alter egos.  See Wm. Passalacqua Builders, Inc. v. Resnick Developers S. Inc., 933

F.2d 131, 142-143 (2d Cir. 1991) (if personal jurisdiction exists over an individual, personal

jurisdiction exists also over his or her corporate alter ego).  While the law of the state of

incorporation typically governs an alter ego determination, where the parties have agreed to the

application of another jurisdiction's law, their consent concludes the choice of law inquiry.

Mercury Time, Inc. v. Gruen Mktg. Corp., No. 97 Civ. 0020 (JG), 1999 WL 342299, at **14-15

(E.D.N.Y. May 26, 1999) (alter ego inquiry under New York law for Delaware corporation

where disputed agreement contained New York choice of law provision) (citing Am. Fuel Corp.

v. Utah Energy Dev., 122 F.3d 130, 134 (2d Cir. 1997)).  Thus where, as here, plaintiffs

specifically agreed pursuant to the LPA and OA that the laws of the Cayman Islands and New

York would govern their disputes, the alter ego determination is also made under either Cayman

or New York law, including with respect to a Brazilian corporation such as Banco Opportunity.[14]

See id.

----

[14]    Even assuming arguendo defendants' position that Banco Opportunity's alter ego liability is
        determined by the laws of Brazil — which it is not because the parties agreed to the application of
        Cayman and New York law — the result remains the same.  See Opinion of José Roberto Opice,
        dated August 4, 2006 ("Opice Opinion") ¶¶ 4-13. Contrary to defendants' assertion, Article 50 of
        the 2002 Brazilian Civil Code is not the sole source of law that Brazilian courts rely on in
        disregarding corporate separateness.  See id. ¶8.  In fact, the "doctrine of disregard" under

In order to obtain jurisdiction over an alter ego under New York law, a complaint

must allege that the principal dominated the alter ego in connection with the wrong committed

against the plaintiff. See, e.g., Lindsay v. Wrecked & Abandoned Vessel R.M.S. TITANIC, No.

97 Civ. 9243 (HB), 1998 WL 557591, at *5 (S.D.N.Y. Sept. 2, 1998). The singularity of identity

between Opportunity and Opportunity Fund, Banco Opportunity and Opportunity Prime is

generally evidenced by: (i) lack of corporate formalities, including the marketing of the group as

simply "Opportunity;"[15] (ii) exclusive control by the relatives and close business associates of

Dantas; (iii) apparent and actual authority by the various agents to act on behalf of all the

Opportunity entities (Exs. H-Q); (iv) occupation of the same office premises, see, e.g., V. Dantas

Depo. (Ex. S) at 7:9-8:22 (testifying that that same room at 231 Avenida Presidente Wilson on

the 28th Floor is shared by numerous indistinguishable Opportunity entities); and (v) diversion of

corporate assets for the personal benefit of Dantas and his relatives and associates, see TAC

¶¶ 93-98. See Passalacqua, 933 F.2d at 138-39 (listing relevant alter ego veil piercing factors

under New York law); ESI, Inc., 61 F. Supp. 2d at 54 (alter ego jurisdiction where overlap in

ownership, operation and existence dependent on financial support of principals, massive overlap

in corporate officers and directors, and dominated entities formed to finance, own, operate and

---

Brazilian law is substantially similar to the liability of dominated corporate entities under New York and Cayman law. See id. ¶ 4.

[15]  See, e.g., V. Dantas Depo. (Ex. S) at 8:5-8:13 ("MS. DANTAS: There are so many companies and holding companies that I really couldn't tell you which ones I'm an officer of, and which ones I'm a director of."); id. at 82:2-83:17 (stating that her business card identifies her employer as simply as "Opportunity"); **REDACTED**
; June 29, 2005 Deposition Transcript of Maria Amalia Courtrim (Ex. R) at 12:1-12:19 (stating that the Opportunity corporate chain "is very flexible"); id. at Ex. 5 (business card of Maria Amalia Courtrim identifying her employer as "Opportunity").

manage principal's underlying business); Brougham Decl. ¶¶ 3-4 (same under Cayman Law);
Opice Opinion ¶¶ 7-8 (same under Brazilian law).

   The domination of the corporate alter ego "need not be complete as to every detail
but must only be 'complete . . . in respect to the transaction[s] attacked.'" Gorrill v.
IcelandAir/Flugleidir, 761 F.2d 847, 853 (2d Cir. 1985) (internal quotation marks and citation
omitted) (emphasis in original); Opice Opinion ¶¶ 6-7 (same under Brazilian law); Brougham
Decl. ¶ 3 (same under Cayman law). Indeed, here all three alter egos — Opportunity Fund,
Banco Opportunity, and Opportunity Prime — were direct parties to various transactions
attacked in the Complaint, exploiting the Opportunity "corporate machinery to line their pockets
at the likely expense of their cestuis que trustent." IEII I, 407 F. Supp. 2d at 507. These
agreements, which were in no way negotiated at arms length between the various Opportunity
entities, had the singular purpose to profit Opportunity. Dorio Ferman and Veronica Dantas
spend the majority of their declarations in support of these motions insisting that the alter egos
have separate existences when examined outside of their relationship to plaintiffs. See, e.g.,
Ferman Decl. ¶¶ 17-21; V. Dantas Decl. ¶¶ 4, 9. These assertions, in addition to lacking in
credibility, are irrelevant. The indicia of domination are measured with respect to the
transactions attacked here and not in some other context unrelated to plaintiffs. See, e.g., Gorrill,
761 F.2d at 853; In re InSITE Servs. Corp., 287 B.R. 79, 96 (Bankr. S.D.N.Y. 2002) (not
determinative that alter ego may have had a separate existence outside of the transactions
attacked). Indeed, the defendants do not offer any independent business purpose for why they
were party to these related-party transactions, and the self-dealing nature of the agreements
makes it clear that this was an Opportunity and Dantas-imposed scheme.[16]

---

[16] Defendants' description of how agreements are typically signed, even when Banco Opportunity is
a party, is telling — agreements are created at the behest of Arthur Carvalho and Dantas and then

23

Notably, under New York law, the exercise of personal jurisdiction over an alleged alter ego requires application of a "less onerous standard" than that necessary in equity to pierce the corporate veil. Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981) (district court erred because unlike piercing the corporate veil for purposes of liability, in order to obtain jurisdiction over a dominated entity not necessary for the plaintiffs to allege control for a fraudulent or unlawful purpose). And even to the extent particular fraud allegations are required under either Cayman or Brazilian law, here the Complaint easily meets that pleading standard. The alter egos were the vehicles and even formal parties to several of the improper transactions that are now attacked by the plaintiffs, including, for example, the April 28 Agreements, which were executed by the three entities, Opportunity Fund, Banco Opportunity and Opportunity Prime. See TAC ¶¶ 174-187; Opice Opinion ¶¶ 6-8 (Brazilian law); Brougham Decl. ¶¶ 3-4 (Cayman law).

Opportunity Fund. Opportunity Fund operates out of the Opportunity Headquarters; its sole director is OAM Inc., V. Dantas Decl. ¶ 1, whose own directors include Dantas, Veronica Dantas and Dorio Ferman, see Ex. HH, with the latter two individuals routinely signing agreements on behalf of the corporation, see, e.g., Ex. BB (Veronica Dantas and Dorio Ferman signing Opportunity Fund power of attorney); Ex. V (Veronica Dantas and Ferman signing Opportunity Fund letter). As a member of the conspiracy led by Opportunity, Dantas and Carvalho, Opportunity Fund was a party to the Highlake Transaction (TAC ¶¶ 33-51), BrT Tag-Along Agreement (id. ¶¶ 63-74), Umbrella Agreement (id. ¶¶, 75-78) the Alcatel Transaction (id. ¶¶ 89-92), Highlake Tag-Along Agreement (id. ¶ 123), Tele Norte Leste Tag-

---

the residents of the 28ᵗʰ floor sign. See, e.g., June 28, 2005 Deposition Tr. of Danielle Silbergleid (Ex. LL) at 29:14-36:16; id. at 74:19-80:16. If Banco Opportunity were fully separate one would expect at least some negotiation.

Along Agreement (id. ¶¶ 137-140), Zain Tag-Along Agreement (id. ¶¶ 141-146), AFAC
Agreement (id. ¶¶ 147-153) and April 28 Agreements (id. ¶ 160). And in these transactions, it
was Veronica Dantas and Ferman who acted for Opportunity Fund and signed agreements on
behalf of the Opportunity alter ego. See, e.g., Ex. J (Veronica Dantas and Dorio Ferman signing
Umbrella Agreement on behalf of Opportunity Fund); Ex. I (BrT Tag-Along Agreement); Ex. L
(HighlakeTag-Along Agreement); Ex. H (Zain Tag-Along Agreement); Ex. K (AFAC
Agreement); Exs. M-Q (April 28 Agreements).

   Opportunity Prime. Defendant Opportunity Prime is organized under the laws of
the British Virgin Islands, though it has no employees there or anywhere else. V. Dantas Decl. ¶
11. Dantas, Veronica Dantas and Ferman are the only directors of the company. Defs.'
Amended Answers and Objections to Pls.' First Set of Interrogatories, dated Dec. 8, 2005 (Ex.
HH).[17] Opportunity Prime is nothing more than a corporate shell used by defendants as a vehicle
to receive nearly $300 million of the improper consideration paid to defendants as part of the
April 28 Agreements. See Exs. M-Q (Veronica Dantas and Dorio Ferman signing April 28
Agreements on behalf of Opportunity Prime).

   Banco Opportunity. With respect to Banco Opportunity, this Court has already
noted based upon the evidence submitted by plaintiffs in support of their motion to compel that
there is good reason to conclude that Banco Opportunity is an alter ego of Opportunity. See
Order, dated Dec. 13, 2005.[18] Indeed, Veronica Dantas and Ferman, along with Carvalho, are

---

[17] As part of defendants' illegitimate attempt to distance Ferman from the Dantases and
Opportunity, the Veronica Dantas Declaration omits to inform the Court that Ferman is a director
of Opportunity Prime as well, and instead claims that Daniel and Veronica are the sole directors.
See V. Dantas Decl. ¶ 11.

[18] Defendants try to cabin the conclusion of the Second Corporate Court of Rio de Janeiro that it
was "obvious as the sun" that the Opportunity parties to the Umbrella Agreement, which include
Banco Opportunity, represent one in the same interest, see TAC ¶ 175, by noting that the decision
was reversed on appeal. Opp. Br. at 18, n.7. But the reversal on statute of limitations grounds

primary representatives of Banco Opportunity.  See, e.g., Ex. J (Veronica Dantas and Carvalho

signing the Umbrella Agreement on behalf of Banco Opportunity); Ex. Z-AA (Veronica Dantas

signing shareholders minutes on behalf of Banco Opportunity); Exs. FF-GG (Carvalho signing

service agreements on behalf of Banco Opportunity).  Despite defendants' current denial, see

Ferman Decl. ¶ 16, Banco Opportunity's own documents indicate that Carvalho has at times

acted as director of the corporation.  See Ex. Y (letter to Banco Opportunity care of Arthur

Carvalho, Director); Ex. X (Metrô Rio Agenda of Shareholders' Meeting listing Arthur Carvalho

as director of Banco Opportunity).  Opportunity utilized Banco Opportunity for the improper

diversion of plaintiffs' assets (including unwarranted "underwriting" fees to the company itself)

along with the execution of the Umbrella Agreement and the April 28 Agreements, both of

which this Court has affirmed was carried out in violation of plaintiffs' interests and rights.  IEII

I, 407 F. Supp. 2d at 509; IEII II, 427 F. Supp. 2d at 501; July 26 Opinion at 23.  See Ex. J

(Umbrella Agreement); Exs. M, O (Banco Opportunity signing the April 28 Opportunity

Settlement Agreement and BTP Stock Purchase Agreement).  And Banco Opportunity brought

one of the unsuccessful appeals of the May 11 Brazilian injunction of the Umbrella Agreement.

Declaration of Flavio Galdino, dated March 15, 2006, ¶ 6.

       In their attempt to argue that Banco Opportunity in particular is not one of the

incarnations of the Opportunity alter ego, defendants miscalculate the importance of direct

ownership, which is just one control factor in piercing the corporate veil (they do not deny that

Opportunity Prime and Opportunity Fund are in fact owned by Dantas, Opportunity and

Carvalho).  See, e.g., Passalacqua, 933 F.2d at 139 (alter ego liability question for jury and

---

does not detract from the Court's finding.  And defendants' criticism of the conclusion as not
being based on an "intensive analysis of the factual record" is simply a concession that, in the
event that this Court has any doubt about these entities' alter ego status, then jurisdictional
discovery on this issue must be permitted.

decided by "considering the totality of the evidence"); Adler, Coleman Clearing Corp., 399 F.

Supp. 2d 486, 493 (S.D.N.Y. 2005) ("the question of ownership of the [controlled entities],

whether majority or minority, is not by itself determinative of the issue of alter ego liability");

Opice Opinion at 3 n.1. Moreover, the relevant consideration is whether there is an overlap in

ownership, see id.; Passalacqua, 933 F.2d at 139, and here Ferman is an owner of both

Opportunity and Banco Opportunity. TAC ¶¶ 6; Ferman Decl. ¶ 15. Furthermore, "courts may

pierce the corporate veil by applying the doctrine of equitable ownership, under which an

individual who exercises sufficient control over the corporation may be deemed an equitable

owner, notwithstanding the fact that the individual is not a shareholder of the corporation."

Adler, Coleman Clearing Corp., 399 F. Supp. 2d at 493; Guilder v. Cornith Constr. Corp., 235

A.D.2d 619, 619, 651 N.Y.S.2d 706, 707 (3d Dep't 1997) ("Even if the [principals] were not [the

corporation]'s legal owners, it is apparent that they dominated and controlled the corporation to

such an extent that they may be considered its equitable owners."); Opice Opinion ¶ 8.[19]

## D. If The Defendant's Motions Are Not Denied Outright The Plaintiffs Are Entitled To Jurisdictional Discovery

Before the Court could grant the defendants' motions to dismiss, the plaintiffs are

entitled to jurisdictional discovery of: (i) defendants' transactions in New York; (ii) the

relationship between the various entities comprising the Opportunity Group. Parmalat Sec.

Litig., 414 F. Supp. 2d at 441 (standard to receive jurisdictional discovery is making prima facie

showing of jurisdiction); Dardana Ltd. v. A.O. Yuganskneftegaz, 317 F.3d 202, 205-06 (2d Cir.

---

[19]    Defendants' reliance on their other alter ego authorities is similarly misplaced. Plaintiffs in In re Currency Conversion Fee Anitrust Litig., 265 F. Supp. 2d 385, 426 (S.D.N.Y. 2003) made an unadorned invocation of dominion and control, which the Court specifically contrasted with cases where the complaint alleged alter egos had the same officers, use the same name in their advertising, and transfer proceeds between each other. Similarly, in Parmalat Sec. Litig., 375 F. Supp. 2d 278, 297 (S.D.N.Y. 2005), the complaint did not allege a failure to adhere to corporate formalities or that the dominating entity used its domination in connection with the transaction attacked.

2003) (finding plaintiff entitled to discovery on the issue of jurisdiction where defendant was alleged to have solicited and transacted business in New York); S.C. Chimexim S.A. v. Velco Interprises, Ltd., No. 98 Civ. 0142 (DC), 2004 WL 330233, at *3 (S.D.N.Y. Feb. 23, 2004) (party entitled to alter ego discovery where factual issues exist). See also Peterson v. Spartan Indus., Inc., 33 N.Y.2d 463, 467, 354 N.Y.S.2d 905, 905 (1974) (In cases that implicate CPLR 302 "the jurisdictional issue is likely to be complex. Discovery is, therefore, desirable, indeed may be essential, and should quite probably lead to a more accurate judgment than one made solely on the basis of inconclusive preliminary affidavits."). While Opportunity repeats yet again that they have dumped approximately 1.7 million pages of documents on plaintiffs, they cannot deny that jurisdictional discovery has not taken place in this case.

28

## POINT II

## ALL OF THE PLAINTIFFS' CLAIMS AGAINST DEFENDANTS STATE VALID GROUNDS FOR RELIEF

### A.  Carvalho Violated Fiduciary Duties Owed To Plaintiffs (Count 2)

The Opportunity Principals, including Carvalho, agreed under the LPA that they

would assume ongoing fiduciary and professional investment management duties to the limited

partner.  See LPA (Ex. E), §§ 6.1.5, 6.6.1.[20]  Carvalho specifically acknowledged:

> 6.1.5   Acknowledgment of Status as Fiduciary.    The General
> Partner acknowledges, and each Principal by its execution of this
> Agreement acknowledges, that it is a fiduciary to the Limited
> Partners.

Under the OA, the Principals, including Carvalho, also agreed to abide by the agreements side-

by-side requirements.  See OA (Ex. F), § 5.02 (d).[21]

---

[20]    Defendants do not deny — because they could not deny — that plaintiffs have stated claims for aiding and abetting breaches of fiduciary duties (Count 10).  See Declaration of Christopher Brougham dated Mar. 10, 2006 (Ex. II), ¶¶ 2-4; Opice Opinion ¶ 14; Wechsler v. Bowman, 285 N.Y. 284, 291 (1941) ("Any one who knowingly participates with a fiduciary in a breach of trust is liable for the full amount of damage caused thereby to the cestuis que trust.").  Accordingly, Opportunity Fund and Opportunity have only sought the dismissal of the aiding and abetting claims as duplicative of the breach of the LPA claim.  First, the plaintiffs do not bring direct breach of contract claims against Opportunity Fund and Opportunity Prime so any duplication suggestions are inapposite.  Moreover, under New York or Brazilian law "fiduciary duties may arise out of a contractual relationship which is independent of the contract itself."  Lumbermens Mut. Cas. Co. v. Franey Muha Alliant Ins. Servs., 388 F. Supp. 2d 292, 304 (S.D.N.Y. 2005); Mandelblatt v. Devon Stores, Inc., 132 A.D.2d 162, 167-68, 521 N.Y.S.2d 672, 676 (1st Dep't 1987) (party stated valid claims for both breach of contract and fiduciary duty) (emphasis added); Opice Opinion ¶¶ 14-20.

[21]    In addition to the breach of fiduciary duties and professional investment advisor duties, the breach of contract claims also include violations of contractual provisions such as interfering with IEII's right to remove the general partner, defendants' failure to obtain necessary approvals from the Advisory Committee, and defendants' abandonment of their side-by-side obligations.  TAC ¶¶ 204-210, 249-254.  The defendants cannot cite a single authority that stands for the proposition that the breach of contract claim is duplicative of the breach of fiduciary duty and professional malpractice claims.  See Opp. Br. at 29-30.  Cf. Ciocca v. Neff, No. 02 Civ. 5067 (LTS) (HBP), 2005 WL 1473819, at *6 (S.D.N.Y. June 22, 2005).

29

In order to avoid his obligations under the LPA, Carvalho argues first that the neuter pronoun "it" in Section 6.1.5 cannot refer to a natural person such as himself and so he cannot be plaintiffs' fiduciary. Opp. Br. at 24-25. The plain language of the LPA disposes of this nonsense argument, because the LPA specifically provides that the construction of "any pronoun used in this Agreement shall include the corresponding masculine, feminine or neuter forms." See LPA (Ex. E), § 13.14(h). Even without this rule of construction, within Section 6.1.5 itself the Principals are modified by an "its" that indisputably refers to the Opportunity Principals. Id., § 6.1.5 ("The General Partner acknowledges, and each Principal by its execution of this Agreement acknowledges, that it is a fiduciary to the Limited Partners.") (emphasis added). Thus both the plain text and rules of construction of the contract make plain that the "it" in Section 6.1.5 acknowledging fiduciary duties is both Opportunity and the Principals.

Carvalho's argument that this plain reading "would represent a significant end-run around the rule . . . that Carvalho did not, as matter of law, owe any fiduciary duties to Plaintiffs," see Opp. Br. at 25, also fails. Regardless of the common law default rule concerning duties owed by Carvalho to plaintiffs, the parties validly agreed, as they were allowed to do, see Brougham Decl. ¶¶ 6-8, that Carvalho would act as a fiduciary. Remarkably, Carvalho extends his circular argument to claim that that the language of Section 6.6.1 of the LPA — "Each of the General Partner and the Principals shall exercise the care of a professional investment advisor," LPA (Ex. E), § 6.6.1 (emphasis added) — does not create any duties of the principals to the limited partner because such duties do not preexist under Cayman law. See Opp. Br. at 29-30. These arguments are specious, as the precise purpose for the insertion of Sections 6.1.5 and 6.6.1 of the LPA, as is plain from the text, was to override any potential default rules that the General Partner and the Principals did not otherwise — i.e, in the absence of a contractual provision to

30

the contrary — owe fiduciary and professional obligations to the limited partner. See Brougham

Decl. ¶¶ 6-11. There is simply no authority to suggest that parties cannot agree by contract to a

fiduciary relationship or other standard of care. See, e.g., Mandelblatt v. Devon Stores, Inc., 132

A.D.2d 162, 167-68, 521 N.Y.S.2d 672, 676 (1st Dep't 1987); Lumbermens Mut. Cas. Co., 388

F. Supp. 2d at 305; cf. Shapiro v. Cantor, 123 F.3d 717, 721 (2d Cir. 1997) (no allegation of

basis for fiduciary duty).

**B.    Defendants Breached The LPA And OA (Counts 1, 7)**

Carvalho is individually bound by the LPA (Count 1) and the OA (Count 7).[22]

Carvalho argues that he is not liable for breaching the LPA because he is not a "party" to that

agreement. As discussed above, the theory that the signatories undertook no obligations

"simply" by signing the agreements, Opp. Br. at 23, stands in stark contrast to basic principles of

contract as well as the findings of this Court. See Point I.A, supra. Moreover, as an Opportunity

Principal signing the agreement, Carvalho specifically agreed to abide by the individual

obligations imposed on him by the contract. See, e.g., LPA (Ex. E), § 6.1.5 ("The General

Partner acknowledges, and each Principal by its execution of this Agreement acknowledges, that

it is a fiduciary to the Limited Partners."); id., § 6.6.1 ("Each of the General Partner and the

Principals shall exercise the standard of care of a professional investment advisor.").

Defendants offer no rationale justifying why, in light of this plain language,

liability should be limited to one Opportunity Principal signing the LPA — Dantas — to the

exclusion of another, Carvalho.[23] Their arguments that section 6.1.5 is simply an

acknowledgment by one party of another party's obligations, and that Section 6.6.1 merely

---

[22]    Ferman and Banco Opportunity, also parties to the OA, do not dispute that plaintiffs have sufficiently stated direct breach of contract claims against them.

[23]            **REDACTED**

31

articulates a nonbinding standard of care, violate the axiom that "a court must give words in a contract their plain meaning [and] the interpretation of a particular term must make every part of the contract effective and sensible." Goodrich, 1985 WL 2883, at *1 (where agreement was considered as a whole, individual signatories were liable for the contractual obligations). Similarly, under the OA, the Principals agreed that they would abide by the agreement's requirements that they would not divert corporate opportunities to their sole benefit. See OA (Ex. F), § 5.02(d) ("each of the Principals . . . will use their best efforts to identify Side-by-Side Investments . . . in accordance with this Article V."). Contrary to defendants' assertions, Opp. Br. at 22-23, the fact that the "Managers" also agreed to this constraint does not discharge Carvalho's own duties as a Principal and party signatory to the OA. Cf. Lollo, 35 F.3d at 35-36 (principals not bound by agreement where "principals" was not defined therein and they did not sign the agreement). Indeed, the OA specifically provides that "the controlling officers and directors of the General Partner are also the controlling officers of the Brazilian Portfolio Manager," which is defined as one of the Managers. OA, §§ 1.01, 5.01. Thus Carvalho, who is indisputably a controlling officer and director of Opportunity, acknowledged that he also controlled at least one of the Managers. So even if Carvalho were not liable for his own breaches of the OA as a Principal, by causing a controlled corporate entity to breach those same contractual obligations to pursue his personal interests he is individually liable. See Mobile Data Shred, Inc. v. United Bank of Switzerland, No. 99 Civ. 10315 (SAS), 2000 WL 351516, at *7 n.9 (S.D.N.Y. Apr. 5, 2000) (citing cases for claims of tortious interference against corporate officers).[24]

---

[24] Even if plaintiffs' claim against Carvalho for his abandonment of the side-by-by requirements lies in a parallel tort claim, rather than in contract, such a potential amendment to the Complaint would not set forth new facts, but merely add an additional theory of recovery so leave to amend

32

Accordingly, when the Court itself has previously construed the parties' agreements it has unequivocally affirmed that each of the defendant signatories assumed such obligations to the plaintiffs. See IEII I, 407 F. Supp. 2d at 514 (the parties have "certain contractual and legal constraints. One such constraint is Dantas' ongoing fiduciary duty to the CVC Fund."). And "[i]t would be a strange law indeed that would hold that an individual, who had so clearly bound himself individually by contract, could not be sued individually to enforce that contractual obligation." E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co., No. 82 Civ. 7327 (JSM), 1999 WL 350857, at *5 (S.D.N.Y. June 2, 1999) (under English law that "an individual Name may be sued in his or her individual capacity to enforce the obligations of a policy to which he or she subscribed."), aff'd, 241 F.3d 154 (2d Cir. 2001); Brougham Decl. ¶¶ 6-9.

## C.    Plaintiffs Have Stated Claims For Conversion, Fraud, And Negligent Misrepresentation

### 1.    Conversion (Count 8)

Through improper payments to themselves, including through the diversion of funds to their unrelated legal expenses and unjustified "underwriting" fees to defendant Banco Opportunity, the defendants committed the "'unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.'" Vigilant Ins. Co. of Am. v. Housing Auth. of City of El Paso, 87 N.Y.2d 36, 44, 637 N.Y.S.2d 342, 347 (1995) (quoting Employers' Fire Ins. Co. v. Cotten, 245 N.Y. 102, 105 (1927). Specifically, plaintiffs have alleged that: (i) IEII was the sole and exclusive owner of all assets in the CVC Fund, TAC ¶ 256; (ii) that Opportunity had actual possession of all assets in the CVC Fund, id. ¶ 257; and (iii) that defendants caused various assets of the CVC Fund to be misappropriated, id.

---

would be justified. See Brewster v Baltimore & Ohio R.R. Co., 185 A.D.2d 653, 653, 585 N.Y.S.2d 647, 647 (4th Dep't 1992).

¶¶ 258-261. Thus plaintiffs have stated a claim for conversion against Carvalho, Ferman and

Banco Opportunity. LoPresti v. Terwilliger, 126 F.3d 34, 41 (2d Cir. 1997) ("'Conversion

occurs when a [party] exercises unauthorized dominion over personal property in interference

with a[nother party's] legal title or superior right of possession.'") (citations omitted).

Carvalho argues that plaintiffs do not sufficiently allege that he had individual

possession of plaintiffs' funds. See Opp. Br. at 30. However, individual possession is not

required where, as here, the Complaint alleges that Carvalho used his dominion over plaintiffs'

funds to direct them to a controlled corporate entity. See, e.g., LoPresti, 126 F.3d at 42 ("no

doubt" that plaintiff stated claim of conversion where alleged that fiduciary misappropriated

funds for general company account); Astroworks, Inc. v. Astroexhibit, Inc., 257 F. Supp. 2d 609,

613 (S.D.N.Y. 2003) (plaintiff stated claim of conversion against individual who caused

company to misappropriate defendant's property). Defendants' authorities are inapposite. In

Airlines Reporting Corp. v. Vinogradova (In re Vinogradova), 270 B.R. 159, 172 (Bankr.

S.D.N.Y. 2001), Opp. Br. at 30, the Court simply dismissed the conversion claim against a

particular defendant who did not work for the company at the time the alleged conversion took

place there. The dismissed conversion claim in Franklin v. Winard was for a purported right to

purchase a cooperative apartment, and did not allege that the defendant had exercised unlawful

control over any funds or property belonging to the plaintiff. 199 A.D.2d 220, 221, 606

N.Y.S.2d 162, 164 (1st Dep't 1993).

Furthermore, contrary to Carvalho's suggestion, there is no requirement that

plaintiffs pinpoint the "specific" funds that were misappropriated from their $700 million plus

investment. That requirement exists only in the context of the conversion of bank accounts,

because funds deposited in a bank become the property of the bank, and so courts have held that

34

converted funds must be specifically identifiable vis-à-vis the bank's other funds. <u>Feinberg v.</u>
<u>Katz,</u> No. 99 Civ. 45 (CSH), 2002 WL 1751135, at **16-17 (S.D.N.Y. July 26, 2002). Where
these facts do not exist, "the special need for a segregated account does not arise." <u>Id.</u> at *17.
<u>See also</u> <u>Nissho Iwai Am. Corp. v. Siedler,</u> No. 94 Civ. 513 (DLC), 1995 WL 555699, at *3
(S.D.N.Y. Sept. 18, 1995) (lack of specifically identifiable account not a bar to a successful
conversion claim). Here, the allegedly converted assets at issue were owned exclusively by IEII,
and thus defendants must answer for their unauthorized use of any such funds.

### 2.    Fraud And Negligent Misrepresentation (Counts 3 and 4)

Plaintiffs allege that, in or about summer 2002, Dantas made false representations
in connection with the Highlake Transaction, <u>see</u> TAC ¶¶ 36-39, and these misrepresentations
are properly imputed to all of the Principals of the General Partner, including Carvalho. <u>See</u>
<u>Suez Equity Investors, L.P. v. Toronto-Dominion Bank,</u> 250 F.3d 87, 101 (2d Cir. 2001) (under
Rule 10(b)(5) "an allegation that a particular agent [engaged in fraud] will not immunize the
principals from liability for a knowing deception.").[25]  Moreover, as a fiduciary to plaintiffs,
Carvalho had a duty to disclose the terms of the Highlake Transaction and its subsequent
modification. <u>See</u> <u>Grandon v. Merrill Lynch & Co.,</u> 147 F.3d 184, 189 (2d Cir. 1998) ("[T]he
duty to disclose generally 'arises when one party has information that the other [party] is entitled
to know because of a fiduciary or other similar relation of trust and confidence between them.'")
(quoting <u>Chiarella v. United States,</u> 445 U.S. 222, 228, 100 S. Ct. 1108, 1114 (1980) (internal
quotation marks omitted)). Based on a reasonable reliance on these misrepresentations and
omissions, IEII made a $22 million investment in Highlake, which in tandem with other

---

[25]    Because the elements of common law fraud under New York law are substantially identical to
those governing § 10(b), the identical analysis applies. <u>See, e.g.,</u> <u>Rich v. Maidstone Fin., Inc.,</u>
No. 98 Civ. 2569 (DAB), 2002 WL 31867724, at *13 (S.D.N.Y. Dec. 20, 2002).

allegations constitutes an action for fraud and negligent representation. TAC ¶ 40; Banque
Arabe et Internationale D'Investissement v. Md. Nat'l Bank, 57 F.3d 146, 153 (2d Cir. 1995) (To
state a claim for fraudulent misrepresentation under New York law "a plaintiff must show that
(1) the defendant made a material false representation, (2) the defendant intended to defraud the
plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff
suffered damage as a result of such reliance.").[26]

        The Complaint easily satisfies the particularity requirements of Rule 9(b) that it
must: "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2)
identify the speaker, (3) state where and when the statements (or omissions) were made, and (4)
explain why the statements (or omissions) are fraudulent." Harsco Corp. v. Segui, 91 F.3d 337,
347 (2d Cir. 1996) (citations omitted). See TAC ¶¶ 219-237 (identifying: (i) the
misrepresentations and omissions by the defendants (e.g., the convertibility of the Highlake debt
interest); (ii) the parties which made the representation and omission (Dantas, Opportunity and
Carvalho; (iii) where and when the statements where the statements and omission were made (to
Mary Lynn Putney, Citibank's representative in New York in the summer of 2002 and January
2004); and (iv) why they were fraudulent (by misrepresenting that defendants would acquire a
freely convertible debt interest)). Carvalho's fraudulent omissions in connection with Highlake
and his actions in connection with the ultimately enjoined auction of Telemig and Amazonia
(which sought to seize for Highlake the CVC Fund's control premium) — state a claim for fraud.

---

[26]      While Carvalho incorrectly claims that defendants have not sufficiently pleaded reliance, fraud
claims based primarily on failure to disclose, proof of reliance is not a prerequisite to recovery.
Affiliate Ute Citizens v. United States, 406 U.S. 128, 153, 92 S. Ct. 1456, 1472 (1972). Second,
even if reasonable reliance were required, the Second Circuit has held that "a plaintiff's burden is
simply to negate recklessness when the defendant puts that in issue, not to establish due care."
Mallis v. Bankers Trust Co., 615 F.2d 68, 79 (2d Cir. 1980), cert. denied, 449 U.S. 1123, 101 S.
Ct. 938 (1981).

### 3.    These Tort Claims Cannot Be Dismissed As Improperly Duplicative

"It is well settled that the same conduct which may constitute the breach of a contractual obligation may also constitute the breach of a duty arising out of the relationship created by contract but which is independent of the contract itself." Mandelblatt, 132 A.D.2d at 167-68, 521 N.Y.S.2d at 675-76. Carvalho argues that the tort claims should be dismissed as duplicative of the LPA and OA breach of contract claims, but the fraud, negligent representation and conversion claims are not a "mere restatement" of the breach of contract claims.[27] Meyers v. Waverly Fabrics, 65 N.Y.2d 75, 80 n.2, 489 N.Y.S.2d 891, 894 n.2 (1985) ("'a contracting party may be charged with a separate tort liability arising from a breach of duty distinct from, or in addition to, the breach of contract'") (citation omitted); Jones v. Pricewaterhousecoopers, LLP., Civ. No. 602962/2003, 2004 WL 3140909, at *3 (Sup. Ct. N.Y. County Nov. 5, 2004) ("'where a party engages in conduct outside the contract but intended to defeat the contract, its extraneous conduct may support an independent tort claim'") (citation omitted).

Wholly apart from his contractual obligations to plaintiffs, Carvalho had a legal duty not to make fraudulent or negligent statements or omissions to plaintiffs in connection with the Highlake Transaction, or to convert plaintiffs' funds. GLM Corp. v. Klein, 665 F. Supp. 283, 286 (S.D.N.Y. 1987) ("an action for fraud will lie, notwithstanding that the breached fiduciary duty arose from the contract establishing the fiduciary relationship"); Union Carbide Corp. v. Montell N.V., 944 F. Supp. 1119, 1134 (S.D.N.Y. 1996) (fraud claim will not be dismissed on the ground that it is inseparable from the contract claims in the fiduciary context); Jones, 2004 WL 3140909, at *3 ("just because a plaintiff alleges some of the same acts and

---

[27]    The argument is ironic given Carvalho's simultaneous assertion that he can have no contractual liability under the LPA or OA. See Taylor & Jennings, Inc. v. Bellino Bros. Constr. Co., 106 A.D.2d 779, 780, 483 N.Y.S.2d 813, 815 (3d Dep't 1984); EBC I, Inc. v. Goldman Sachs & Co., 7 A.D.3d 418, 777 N.Y.S.2d 440 (1st Dep't 2004).

misrepresentations in connection with its malpractice claim as with the fraud and breach of fiduciary duty claims, does not vitiate the fraud claim"). Accordingly, the tort claims based on this misconduct cannot be dismissed as duplicative of Claims 1 and 7.

**D.      The Unjust Enrichment Claims Are Not Precluded**

Plaintiffs' allegations in connection with the Highlake Transaction, April 28 Agreements and unauthorized payments to themselves, constitute claims for unjust enrichment. See Derven v. PH Consulting, Inc., 427 F. Supp. 2d 360, 369 (S.D.N.Y. 2006) ("The elements of [unjust enrichment] claim are the enrichment of the defendant at the expense of the plaintiff, and that equity and good conscience require the plaintiff's recovery."). The Highlake Transaction, wherein defendants used "other peoples' money" to take for themselves all of the equity in Highlake, is a classic case of unjust enrichment. TAC ¶¶ 33-51, 266. And in connection with the April 28 Agreements, which served to reap extraordinary gains to defendants at the expense of plaintiffs, any benefits received by defendants (which plaintiffs have no way of knowing the full extent of at this stage of litigation but at least equal $65 million) would also no doubt constitute unjust enrichment.

Carvalho's defense to the unjust enrichment claim is once again to have it both ways. He contends that he is not a party to the LPA and simultaneously argues that the quasi-contract claim is precluded because of the existence of that same contract he denies. Black letter law (not to mention common prudence) dictates that taking such contradictory positions is untenable. See, e.g., Bildstein v. MasterCard Int'l, Inc., No. 03 Civ. 98261 (WHP), 2005 WL 1324972, at *5 (S.D.N.Y. June 6, 2005) (plaintiff's agreement with the contracting party cannot preclude an "unjust enrichment claim against . . . a non-party to that agreement."); Maalouf v. Salomon Smith Barney, Inc., No. 02 Civ. 4770 (SAS), 2003 WL 1858153, at *7 (S.D.N.Y. Apr.

10, 2003) (fact that plaintiff could recover only on contract or quasi-contract, but not both, did not preclude from pleading unjust enrichment in the alternative).

E.     **Opportunity Fund, Banco Opportunity And Opportunity Prime Are Liable As The Alter Egos Of Dantas, Carvalho And Opportunity**

A corporate alter ego not only is susceptible to the jurisdiction over its principal but it also is jointly and severally subject to the principal's liability when the dominated corporate entity was used to perpetrate an unlawful act. As set forth above, see Part I.C supra, the plaintiffs properly allege domination and specify with particularity the various means by which the Opportunity alter egos were used to commit wrongs against them, including the execution of undisclosed and unapproved transactions in contravention to plaintiffs' rights and interests and the diversion of assets belonging to CVC Fund and the Portfolio Companies. Astroworks, Inc., 257 F. Supp. 2d at 615 (under New York law denying motion to dismiss alter ego claim where party alleged that principals utilized the corporate form "to engage in fraud, conversion and other unlawful acts"); Brougham Decl. ¶¶ 3-4; Opice Opinion ¶¶ 6-7, 13.

Because under New York a veil piercing claimant can prevail without proving fraud (i.e., a nonfradulent wrong) the plaintiffs' alter ego allegations are not held to the particularity requirement of Fed. R. Civ. P. 9(b). Instead the allegations properly are judged according to the liberal "'notice pleading' standard of Fed. R. Civ. P. 8(a)" (a "'short and plain statement of the claim showing that the pleader is entitled to relief'"). Rolls-Royce Motor Cars, Inc. v. Schudroff, 929 F. Supp. 117, 122 (S.D.N.Y. 1996) (citation omitted); Parmalat Sec. Litig., 414 F. Supp. 2d at 441 ("Allegations of control are not averments of fraud and therefore need not be pleaded with particularity."). And even to the extent particular fraud allegations might be required under either Cayman or Brazilian law, here the Complaint easily meets that pleading standard because the alter egos were the vehicles and even formal parties to several of the very

39

improper transactions that are now attacked by the plaintiffs, including, for example, the April 28

Agreements, which were executed in part by all three alter ego entities. See TAC ¶¶ 174-187;

Opice Opinion ¶¶ 6-7 (Brazilian law); Brougham Decl. ¶¶ 3-4 (Cayman law).

        The authorities that defendants rely on to avoid alter ego liability all involve cases

with absent or incomplete alter ego allegations. See, e.g. Banco Br. at 24; Opp. Br. at 21 (citing

Manos v. Geisller, 377 F. Supp. 2d 422, 425 (S.D.N.Y. 2005) (dismissing Title VII action

against supervisor where plaintiff did not allege that he was an alter ego of the employer));

Currency Conversion, 265 F. Supp. 2d at 425-26 (no allegations that alter egos participated in the

fraud or misconduct); EED Holdings V. Palmer Johnson Acquisitions Corp., 228 F.R.D. 508,

512 (S.D.N.Y. 2005) (same); United Features Syndicate, Inc. v. Miller Features Syndicate, Inc.,

216 F. Supp. 2d 198, 222-23 (S.D.N.Y 2002) (no assertion of facts that principals were using

alter egos for their own benefit and without regard to corporate formalities).  These cases are of

course inapposite to the facts here, where the alter egos are undoubtedly dominated by their

principals and connected to the underlying dispute. See, e.g., InSITE Servs. Corp., 287 B.R. at

95-98 (denying motion to dismiss on veil-piercing where alleged that alter egos assisted

principal's misconduct).

**POINT III**

**PUNITIVE DAMAGES ARE RECOVERABLE UNDER NEW YORK LAW**

        Under New York choice-of-law rules, the availability of punitive damages is

determined under the "'law of the jurisdiction with the strongest interest in the resolution of the

particular issue presented.'" James v. Powell, 19 N.Y.2d 249, 259, 279 N.Y.S.2d 10, 18 (1967)

(citation omitted); see also id. ("Although it is clear that the measurement of compensatory

damages is determined by the same law under which the cause of action arises . . . this is not

40

necessarily true with regard to exemplary damages.") (internal citations omitted).[28] Here, where the misconduct was levied against Citibank in New York and the effects took place within the State, it is clear that this forum has an overriding interest in the dispute.  See, e.g., Int'l Equity Invs., Inc. v. Cico, 427 F. Supp. 2d 503, 505 (S.D.N.Y. 2006) (this forum had significant interest in the dispute because "Citigroup is based here, and the actions of Dantas and [his coconspirators] allegedly breached duties in relation to its investment of more than $700 million, causing damage to the largest bank in the United States and its doubtlessly predominantly U.S. stockholders").

Under New York law, the Second Circuit has held that punitive damages are available under New York law "where a wrong is aggravated by recklessness or willfulness . . . whether or not directed against the public generally." Roy Exp. Co. v. Columbia Broad. Sys., Inc., 672 F.2d 1095, 1106 (2d Cir.), cert. denied, 459 U.S. 826, 103 S. Ct. 60 (1982) (emphasis added). "Moreover, New York recognizes that punitive damages may be appropriate for a private wrong where the parties' relationship was fiduciary or confidential in nature." H & R Indus., Inc. v. Kirshner, 899 F. Supp. 995, 1012 (E.D.N.Y. 1995) (citing Banque Indosuez v. Barclays Bank PLC, 181 A.D.2d 447, 447, 580 N.Y.S.2d 765, 767 (1st Dep't 1992)). Thus, here, not only have the plaintiffs adequately pled punitive damages on two separate grounds, this Court has already observed that defendants are a group "that is out for themselves and either has no understanding of the concept of a fiduciary duty, or if they understand, absolutely no willingness to discharge that duty." May 4, 2006 Tr. at 29:3-7.

[28]    Defendants' choice of law cases are simply fact patterns where the foreign forum's interests outweighed the interests of New York. Opp. Br. at 33-34 (citing Wang v. Marziani, 885 F. Supp. 74, 77-78 (S.D.NY. 1995); Townes v. Cove Haven, Inc., No. 00 Civ. 5603 (RCC), 2004 WL 2403467, at *2 (S.D.N.Y. Oct. 27, 2004)). None of defendants' cases support a blanket rule that punitive damage claims are always governed by the law of the foreign jurisdiction. And to the extent that defendants imply that a Brazilian court would not recognize the validity of a judgment awarding punitive damages, they are wrong. Opice Opinion ¶¶ 21-22.

## CONCLUSION

For the foregoing reasons, the Court should deny defendants' motions to dismiss.


Dated: New York, New York
         August 4, 2006

                              Respectfully submitted,

                              CLEARY GOTTLIEB STEEN & HAMILTON LLP


                              By /s/ Carmine D. Boccuzzi
                                    Howard S. Zelbo (HZ-3227)
                                    Carmine D. Boccuzzi (CB-2177)


                              One Liberty Plaza
                              New York, New York 10006
                              (212) 225-2000

                              Attorneys for Plaintiffs

Of Counsel:

Rahul Mukhi