UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
INTERNATIONAL EQUITY INVESTMENTS, INC., et al.,

                Plaintiffs,

      -against-                                     05 Civ. 2745 (LAK)

OPPORTUNITY EQUITY PARTNERS LTD., et al.,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### MEMORANDUM OPINION

Appearances:

                Howard S. Zelbo
                Carmine D. Boccuzzi
                CLEARY GOTTLIEB STEEN & HAMILTON LLP
                *Attorneys for Plaintiffs*

                Marc L. Greenwald
                Emily B. Costello
                QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
                *Attorneys for Defendants Banco Opportunity S.A. and*
                *Dorio Ferman*

LEWIS A. KAPLAN, *District Judge.*

        This action is part of a dispute between affiliates of Citigroup, on the one hand, and its former Brazilian partner, Daniel Valente Dantas, and affiliates, on the other. The factual

background is complex, and I assume familiarity with my previous opinions in the case[1] rather than again tread heavily plowed ground. The matter now is before me on the motion of defendants Banco Opportunity S.A. ("Banco") and Dorio Ferman to dismiss the third amended complaint as against them for lack of personal jurisdiction or, in the alternative, for legal insufficiency to the extent it purports to state a claim against Banco on a theory of *alter ego* liability.

*Facts*

Very little need be added to what has been said already to focus on the facts pertinent to the present motion.

I.  Background

As has been noted previously, in the late 1990s, Citigroup decided to increase its Brazilian investments through a fund managed by a local partner who would invest a relatively small amount of its own money as well. It chose defendant Daniel Valente Dantas as its local partner. Dantas's entity, Opportunity Equity Partners, Ltd. ("Opportunity"), became the sole general partner of the Citigroup fund, then known as CVC/Opportunity Equity Partners, L.P. (the "CVC Fund"),

---

[1] *Int'l Equity Invests., Inc. v. Opportunity Equity Partners, Ltd.*, 441 F. Supp. 2d 552 (S.D.N.Y. 2006); *Int'l Equity Invests., Inc. v. Opportunity Equity Partners, Ltd.*, 2006 WL 1293281 (S.D.N.Y. May 10, 2006); *Int'l Equity Invests., Inc. v. Opportunity Equity Partners, Ltd.*, 2006 WL 1116437 (S.D.N.Y. Apr. 26, 2006); *Int'l Equity Invests., Inc. v. Opportunity Equity Partners, Ltd.*, 427 F. Supp. 2d 491 (S.D.N.Y. 2006); *Int'l Equity Invests., Inc. v. Opportunity Equity Partners, Ltd.*, 411 F. Supp. 2d 458 (S.D.N.Y. 2006); *Int'l Equity Invests., Inc. v. Opportunity Equity Partners, Ltd.*, 407 F. Supp. 2d 483 (S.D.N.Y. 2005).

pursuant to a limited partnership agreement.[2] Although Dantas was the dominant figure in Opportunity, Ferman also was a shareholder.

At about the same time, the Brazilian government began privatizing certain telecommunications assets. Citigroup was anxious to participate. Its subsidiary, Citibank, N.A. ("Citibank"), joined forces with a group of Brazilian pension funds (the "Pension Funds") to that end. The Pension Funds formed an investment vehicle (the "Onshore Fund") and appointed Opportunity as its manager.

II.     *The Operating Agreement*

At the same time, Citibank, Opportunity, an entity called CVC/Opportunity Equity Partners Administradora de Recursos that served as the administrator of the Onshore Fund, Banco, Ferman, and others entered into the so-called Operating Agreement ("OA").[3] Broadly speaking, the OA contemplated that the CVC Fund, the Onshore Fund, and a fund and other entities controlled by Dantas, as well as Ferman and other Dantas colleagues, would invest in various opportunities on what they referred to as a side-by-side basis. Section 3.02 of the OA further provided that management of the vehicles through which the investments would be made would "be vested exclusively in or assigned exclusively to the General Partner [i.e., Opportunity], or an Affiliate Under Common Control With the General Partner," which "shall have full control over the affairs

---

[2]     Greenwald Decl. Ex. A.

[3]     *Id.* Ex. B.

of each" vehicle through which an investment was made.[4]

The OA had a further provision central to this motion. The parties agreed that any suit, action, or proceeding "arising out of or based upon this Agreement or the transactions contemplated hereby may be instituted in any state or federal court in the Borough of Manhattan." They irrevocably appointed an agent in Manhattan for service of process in any such suit.[5]

In time, there was a falling out between Dantas and both Citibank and the Pension Funds. First, the Pension Funds removed or procured the removal of Dantas and his group from control of the Onshore Fund. Later, Citibank removed Opportunity as general partner of the CVC Fund. This lawsuit followed.

### III.     *The Allegations Against Banco and Ferman*

During the course of this case, most of the attention has been focused on a battle over Brasil Telecom that centered on efforts to remove Dantas from positions of control or influence over that company following his discharge by the Onshore Funds and the ouster of Opportunity as general partner of the CVC Fund. At this point, however, the allegations of the third amended complaint (the "TAC") are considerably broader.

The TAC contains three causes of action pertinent here. Claim VII charges Banco with breach of the OA. Claim VIII charges both Banco and Ferman with conversion in that both allegedly looted or participated in looting the CVC Fund by, among other things, causing it to make

---

[4] *Id*. Ex B § 3.02.

[5] *Id*. Ex. B § 7.06.

various payments to or for the benefit of Dantas or his affiliates. Claim X accuses them and others of aiding and abetting breaches of fiduciary duty owed by Dantas, Opportunity, and others to the CVC Fund.

*Discussion*

I.  *Personal Jurisdiction*

As Banco now concedes that the Court has personal jurisdiction pursuant to the contractual submission of the claim against it for breach of the OA (Claim VII), what remains of the motion is principally the contention of Banco and Ferman that jurisdiction is lacking with respect to the conversion and aiding and abetting claims (Claims VIII and X). While the parties have litigated vigorously various theories on which jurisdiction might be found, it is necessary to focus only on the submission to jurisdiction contained in the OA.

As noted, the OA contemplated that the CVC Fund, the Brazilian funds, and Dantas's own controlled fund would make side-by-side investments. It contemplated further that Ferman and others would invest with them and that the vehicles through which the investments were made would be controlled entirely by Dantas or his designees.

The two claims that remain at issue allege that Banco and Ferman took advantage of the positions in which they were placed by Dantas to loot the CVC Fund and that they aided and abetted Dantas and others in breaching their fiduciary duties to the CVC Fund. In light of the language of the submission to jurisdiction, the OA is dispositive of the jurisdictional challenge if these claims "aris[e] out of or [are] based upon [the OA] or the transactions contemplated [t]hereby."

While the OA does not purport to define these terms, it was negotiated among

6

wealthy, sophisticated, and well represented persons against an exceptionally rich legal background. Similar language is used in forum selection clauses, the long-arm statutes of many states, and in countless arbitration clauses. Its meaning is fairly well established.

*Roby v. Corporation of Lloyd's*[6] is illustrative of the approach in forum selection clause cases. Our Circuit there held that forum selection clauses applicable to claims "arising out of" a contractual relationship were "not restricted to pure breaches of the contracts containing the clauses" but covered also related securities and antitrust claims.[7]

The construction of long-arm statutes is another useful index. New York's, for example, permits the exercise of personal jurisdiction over, *inter alia*, any claim arising out of the defendant's transaction of business in New York.[8] New York courts therefore frequently must assess the proximity of a defendant's contacts with New York and a claim in suit.

> "As many courts have pointed out, determining whether a claim stands in sufficient proximity to the transaction of business in the forum state to permit the forum to exercise jurisdiction over the defendant with respect to the claim is not an exact science. It involves a judgment as to whether the cause of action is sufficiently related to the business transacted that it would not be unfair to deem it to arise out of the transacted business. To determine whether a sufficient nexus exists, a court must evaluate the totality of the circumstances surrounding defendants' activities in New York in connection with the matter giving rise to the lawsuit."[9]

---

[6]   996 F.2d 1353 (2d Cir.1993)

[7]   *Id.* at 1361.

[8]   N.Y. CPLR § 302(a)(1).

[9]   *Antaeus Enterprises, Inc. v. SD-Barn Real Estate, LLC*, 396 F. Supp. 2d 408, 410 (S.D.N.Y. 2005) (quoting *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1109 (2d Cir. 1997) (quoting *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 59 (2d Cir. 1985)) (footnotes and internal quotations omitted); *accord Weisberg v. Smith*, __ F. Supp. 2d __,

By analogy, the long-arm statutes therefore suggest that the question whether a claim arises out of or is based upon the OA or the transactions contemplated by it turns on the closeness of the nexus between the claim and the OA or the transactions it contemplated.

The arbitration cases point in the same direction.[10] Clauses agreeing to arbitrate disputes that arise out of or relate to an agreement typically have been construed to require arbitration not only of claims of breach, but also of claims that "touch matters" covered by or "pertain to" the contract at issue as well as claims that "are 'integrally linked' to the contractual relation."[11]

Here, there is a close link between the OA and transactions contemplated thereby, on the one hand, and the claims that Banco and Ferman looted, and aided and abetted Dantas and others in breaching fiduciary duties owed to, the CVC Fund, on the other. The fact that Banco and Ferman had any connection at all to the CVC Fund was attributable only to the relationship between Dantas and Citibank, an important part of the framework for which was the OA. Their allegedly tortious activities, moreover, took place in relation to so-called side-by-side investments, the making of which was the very purpose of the OA. It surely would not be unfair to deem those claims to arise out of the OA or transactions it contemplated.

---

No. 05 Civ. 7478 (LAK), 2007 WL 466606, at *1 (S.D.N.Y. Feb. 13, 2007); *Cuccioli v. Jekyl & Hyde Neue Metropol Bremen Theater Produktion GmbH & Co.*, 150 F. Supp. 2d 566, 571 (S.D.N.Y. 2001).

[10] The strong public policy favoring arbitration does not distinguish these cases, as a comparable policy favors enforcement of forum selection clauses. *See Roby*, 996 F.2d at 1361.

[11] *See Mehler v. Terminix Int'l Co. L.P.*, 205 F.3d 44, 50 (2d Cir. 2000) (quoting *Collins & Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16, 23 (2d Cir. 1995); *Coudert v. Paine Webber Jackson & Curtis*, 705 F.2d 78, 82 (2d Cir. 1983); *Popper v. Monroe*, 673 F. Supp. 1228, 1230 (S.D.N.Y. 1987)).

8

Banco and Ferman nevertheless argue that the OA is not a sufficient basis for personal jurisdiction. They contend that contractual submissions to jurisdiction encompass related tort claims only "if the tort claims ultimately depend on the existence of a contractual relationship between the parties, or if resolution of the claims relates to interpretation of the contract, or if the tort claims involve the same operative facts as a parallel claim for breach of contract."[12] The touchstone, they say, is "whether the plaintiff's claims depend on rights and duties that must be analyzed by reference to the contractual relationship."[13] But one need not disagree with this statement of the relevant principle to reject defendants' argument. Here, the tort claims ultimately do depend upon the existence of the contractual relationship between the parties. Not only were Banco and Ferman in the positions that they allegedly abused by reason of the contractual relationship, but the measure of the propriety of their actions includes, among other things, the scope of their obligations by reason of the OA.

Accordingly, the claims in question arise out of or are based upon the OA or transactions contemplated by it. The Court has personal jurisdiction.

II.   *The* Alter Ego *Claim Against Banco*

The TAC suggests that Banco is sued not only on the theory that it is primarily liable for its own actions, but also on the theory that it was an *alter ego* for Dantas, Opportunity, and

---

[12] Def. Mem. 9-10 (quoting *Direct Mail Prod. Servs. Ltd. v. MBNA Corp.,* No. 99-10550 (SHS), 2000 WL 1277597, at *6 (S.D.N.Y. Sept. 7, 2000)).

[13] *Id*. at 10.

Carvalho.[14] Banco seeks dismissal of that theory, favoring the Court with factual submissions beyond the allegations of the complaint as well as evidence of foreign law.[15]

It is important to focus on the sense in which plaintiffs use the term *alter ego.* This does not appear to be a case in which they seek to impose liability on a controlling person by virtue of its status for independently wrongful actions by a controlled person, as where one seeks to impose liability upon a dominant shareholder for wrongs committed by the (usually judgment proof) corporate entity and not by the shareholder. Rather, the TAC alleges:

> "186. Dantas, Carvalho and Opportunity improperly caused Banco Opportunity to enter into many of the April 28th Agreements, including the (a) BTP Stock Purchase Agreement, pursuant to which Banco Opportunity, as a 'Manager' and 'Opportunity Party' causes the Opportunity Funds to transfer the Opportunity Group's holdings of Brasil Telecom stock to Telecom Italia through the Opportunity Prime special purpose vehicle and (b) the Opportunity Settlement Agreement. Dorio Ferman signed both of these agreements on behalf of Banco Opportunity.
>
> "187.   Dantas, Carvalho and Opportunity acted through Banco Opportunity to engage in numerous other wrongful acts against plaintiffs, including by (a) using Banco Opportunity to hold the CVC Fund assets in Opportunity custody against plaintiffs' express wishes, (b) causing several Portfolio Companies, including Zain, Futuretel and Invitel, to pay Banco Opportunity excessive investment banking fees and (c) causing Banco Opportunity to enter into the Umbrella Agreement. Significantly, Veronica Dantas and defendant Carvalho signed the Umbrella Agreement for Banco Opportunity."[16]

Plaintiffs thus appear to seek to impose liability *on Banco* on the theory that Dantas, Opportunity, and Carvalho used Banco as a cat's paw to facilitate their own wrongs. In other words, they seek

---

[14] TAC ¶¶ 174, 262.

[15] I decline to consider the factual materials and thus to convert the motion into one for summary judgment. *See* FED. R. CIV. P. 12(b).

[16] TAC ¶¶ 186, 187.

to impose liability on the controlling persons for breaches of duty by the controlling persons in which they used the controlled person as an instrument, as distinguished from imposing liability upon the controlling persons for breaches of duty by the controlled person by virtue of their status as controlling persons.

At least at the moment, then, the issue appears to be not so much one of disregarding the corporate entity in the usual sense, but whether Banco may be held liable in consequence of its utilization by Dantas and others. But Banco almost surely would be liable for any tortious actions it committed, regardless of whether it committed them as an instrumentality for Dantas and others.[17] I therefore fail to see how the question whether the TAC sufficiently alleges that Banco was an *alter ego* of Dantas and others has any bearing on the sufficiency of the TAC as against Banco.

*Conclusion*

For the foregoing reasons, the motion of defendants Banco Opportunity S.A. and Dorio Ferman to dismiss the third amended complaint is denied.

SO ORDERED.

Dated:        February 26, 2007

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[17] *See* RESTATEMENT (THIRD) OF AGENCY § 7.01 & cmt. b (2006).