USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3-2-10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

INTERNATIONAL EQUITY
INVESTMENTS, INC., et al.,
                          Plaintiffs,

- against -

OPPORTUNITY EQUITY PARTNERS LTD., et al.,
                          Defendants,

BRASIL TELECOM, S.A.,
                          Movant,

CITIBANK N.A., et al.,
                          Counter Defendants,

LUIS ROBERTO DEMARCO ALMEIDA,
                          Intervenor,

OPPORTUNITY EQUITY PARTNERS LTD.,
                          Counter Claimant,

-against-

CITIGROUP VENTURE CAPITAL INT'L
BRAZIL, LLC, *On behalf of itself and Citgroup
Venture Capital Int'l Brazil, L.P. (f.k.a. CVC/
Opportunity Equity Partners, L.P.)*, et al.,
                          Counter Defendants.

MEMORANDUM
OPINION & ORDER

05 Civ. 2745 (JGK) (RLE)

**RONALD L. ELLIS, United States Magistrate Judge:**

## I. INTRODUCTION

Before the Court is a motion by non-party Luís Roberto Demarco Almeida ("Demarco") to intervene under Rule 24(b) of the Federal Rules of Civil Procedure to modify a confidentiality order and gain access to sealed documents. For the following reasons, Demarco's motion to intervene is **GRANTED**, but permission to modify the confidentiality order is **DENIED**.

## II. BACKGROUND

The underlying action involved now-settled litigation between Plaintiffs International Equity Investments, Inc., and Citigroup Venture Capital International Brasil, LLC, on behalf of itself and Citigroup Venture Capital International Brasil, LP (collectively, "Citigroup") and Defendants Opportunity Equity Partners, Ltd.; Daniel Dantas; Arthur Carvalho; Opportunity Fund; and Opportunity Prime Investment Services, Ltd. (collectively, "Opportunity"). Demarco has no claim to assert in the underlying action. He seeks only to unseal certain documents that Citigroup and Opportunity filed with the Court in the underlying civil litigation, and that were designated "Confidential" or "Attorneys' Eyes Only" pursuant to a stipulated confidentiality order.[1]

Demarco, a shareholder and former director of Opportunity Equity Partners, Ltd., currently resides in Brazil and has been involved in litigation against Citigroup or Opportunity in the New York state court, Brazil, England and the Cayman Islands since early 1999. Demarco seeks access to the documents for use in his defense in Brazilian civil litigation initiated by Opportunity Equity Partners, Ltd., and in connection with his role as a prosecution assistant in criminal proceedings against Opportunity Defendant Dantas in Brazil. He also seeks to ensure that the Parties "do not obtain an adjudication based on representations different from the representations being made to the court in Brazil." (Mem. of Law in Support of Mot. of Non-Party Luís Roberto Demarco Almeida to Intervene in Order to Seek Unsealing of Documents ("Demarco Mem.") 4, Apr. 4, 2008.)

Demarco seeks to unseal all of the documents filed in support of, and in opposition to,

---

[1] An amended order was entered on March 17, 2006, and incorporated the language of the original September 6, 2005 order. The amended order added the "Attorneys' Eyes Only" designation.

2

Citigroup's February 6, 2008 motion for a preliminary injunction.[2] The underlying litigation between Citigroup and Opportunity was ongoing at the time Demarco filed his motion to intervene but has since settled. Demarco's request focuses on Opportunity's submissions and specifically identifies only one–the Kroll Report. Apparently, Brasil Telecom initiated an investigation, conducted by Kroll, Inc., against Telecom Italia, as part of an ongoing telecommunication dispute in Brazil. Opportunity was a controlling shareholder of Brasil Telecom at the time of the investigation. Demarco claims that Kroll illegally obtained information from him, and included it in the Kroll Report. (Affirmation of Andrea Bierstein in Sup. of Mot. of Luis Roberto Demarco Almeida to Intervene ("Bierstein Affirmation") ¶ 10, Apr. 4, 2008.) Even though both Demarco and the Brazilian courts have obtained a copy of the report, Demarco has pursued intervention to obtain Opportunity's copy because he believes it may be a different version.

Demarco's request for the remaining documents,[3] which relate to the business dealings between Opportunity, Citibank, Telecom Brasil and Telecom Italia, was prompted by his belief that some of them were stolen from him during the Kroll investigation. (Bierstein Affirmation ¶¶ 10, 11, 15.) He argues that they are necessary to defend the civil allegations and to compare the filings here to representations made by Opportunity in the Brazilian proceedings.

---

[2] Demarco's notice of motion and initial memorandum request the preliminary injunction documents only. His attorney's affidavit includes a request for documents attached to two other motions. (Affirmation of Andrea Bierstein in Supp. of Mot. of Luis Roberto Demarco Almeida to Intervene ("Bierstein Affirmation") 1, April 4, 2008 (identifying Plaintiffs' March 19, 2008 motion for a protective order and their November 7, 2007 motion to compel discovery).) However, Demarco's reply confirms his initial request. As such, the Court considers Demarco's motion to intervene and unseal documents as referring only to the preliminary injunction documents.

[3] The documents include letters from Opportunity's counsel that contain internal financial information and excerpts of depositions that relate to the internal corporate structure of both Parties, and business dealings related to the "Highlake transaction." (Opportunity Defs.' Supplemental Submission. in Opp'n to Non-Party Luis Roberto Demarco Almeida's Mot. to Intervene in Order to Unseal Documents ("Defs. Supplemental in Opp'n) 7; Pls.' Sur-Reply in Opp'n to Non-Party Luis Roberto Demarco Almeida's Mot. to Intervene in Order to Seek Unsealing of Documents ("Pls.' Sur-Reply") 4-6.)

3

### III. DISCUSSION

Opportunity and Citigroup characterize Demarco's motion to intervene as an improper attempt to avoid discovery limitations in litigation pending in other jurisdictions. They assert that it "is presumptively unfair for courts to modify protective orders which assure confidentiality and upon which the parties have reasonably relied." *AT&T Corp. v. Sprint Corp.*, 407 F.3d 560, 562 (2d Cir. 2005) (quoting *S.E.C. v. TheStreet.com*, 273 F.3d 222, 230 (2d Cir. 2001). Though some cases treat the motion to intervene and to unseal documents as a single question, the intervention and the unsealing raise distinct issues. *See id.* at 561.

### A. Permissive Intervention for the Purpose of Modifying a Protective Order

Federal Rule of Civil Procedure 24(b) provides: "On a timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." It is well-settled that "permissive intervention is the proper method for a nonparty to seek modification of a protective order." *AT&T Corp.*, 407 F.3d at 562; *see Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 293-94 (2d Cir. 1979) (noting that permissive intervention is the proper procedure for "obtaining vacation or modification of the protective order"); *see also The Diversified Group, Inc. v. Daugerdas*, 217 F.R.D. 152, 157 (S.D.N.Y. 2003). A district court has broad discretion when considering permissive intervention, but "must consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *AT&T Corp.*, 407 F.3d at 561-62 (quoting Fed. R .Civ. P. 24(b)). The purpose of Rule 24(b)'s timeliness requirement, however, is "to prevent prejudice in the adjudication of the rights of the existing parties, a concern not present when the existing parties have settled their dispute and intervention is for a collateral purpose." *Diversified Group, Inc.*, 217 F.R.D. at 158 n.4 (quoting *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424,

4

1427 (10th Cir. 1990) (allowing intervention three years after case settled because intervention "was for the sole purpose of challenging a protective order")).

Rule 24(b) is to be construed liberally and "is satisfied when, despite factual differences between the parties, a common question of law is involved." *German v. Federal Home Loan Mortg. Corp.*, 899 F. Supp. 1155, 1166 (S.D.N.Y. 1995) (citing *Davis v. Smith*, 431 F. Supp. 1206, 1209 (S.D.N.Y. 1977)) (internal quotations omitted). Opportunity and Citigroup contend that the liberal construction does not apply when the court is considering the narrow question of modification of a protective order to "access to confidential materials" (Pls.' Mem. of Law in Opp'n to Non-Party Luis Roberto Demarco Almeida's Mot. to Intervene in Order to Seek Unsealing of Documents ("Pls.' Mem.") 4 n.3; Opportunity Defs.' Mem. in Opp'n to Non-Party Luis Roberto Demarco Almeida's Mot. to Intervene in Order to Unseal Documents ("Defs.' Mem.") 5 n.3.) The Court disagrees. While both Plaintiffs and Defendants seek to shift the Court's focus to the ultimate goal of preventing modification, they address the problem from the wrong direction. A movant cannot seek modification of the protective order unless the Court permits him to intervene. Here, the underlying litigation has settled. Intervention for the limited purpose of modifying a protective order will not unduly delay or prejudice the adjudication of the original Parties' rights. Demarco's motion to intervene is therefore **GRANTED**.

### B. Modification of the Confidentiality Order

Rule 26(c) of the Federal Rules of Civil Procedure authorizes courts, for good cause, to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way . . . ." Fed. R. Civ. P. 26(c). These protective orders are subject to modification,

and "[w]hether to lift or modify a protective order is a decision committed to the sound discretion of the trial court." *In re "Agent Orange" Prod. Liab. Litig.*, 821 F.2d 139, 147 (2d Cir. 1987). Although Demarco appears to concede that the materials sought are not judicial documents, his position is not entirely clear.

## 1. Standard for Modification of a Protective Order

Generally, there is a strong presumption against modification of a protective order. "Where there has been reasonable reliance by a party or deponent, a District Court should not modify a protective order granted under Rule 26(c) 'absent a showing of improvidence in the grant of [the] order or some extraordinary circumstance or compelling need.' " *S.E.C. v. TheStreet.com*, 273 F.3d 222, 229 (2d Cir. 2001) (quoting *Martindell*, 594 F.2d at 296. When parties reasonably rely on a protective order, especially by waiving their Fifth Amendment rights and testifying or by producing documents that would not exist but for the protective order, the Second Circuit has been "hesitant to permit modifications that might unfairly disturb the legitimate expectations of the parties or deponents." *In re: Ethylene Propylene Diene Monomer (EPDM) Antitrust Litigation*, 255 F.R.D. 308, 318 (D. Conn. 2009) (*quoting TheStreet.com*, 273 F.3d at 230) (internal quotations omitted).

### a. The Documents Sought Are Not "Judicial," and No Presumption of Access Exists

Opportunity and Citigroup argue–and Demarco effectively concedes–that the documents Demarco seeks are not "judicial documents." (Reply Mem. of Law in Further Supp. of Mot. of Non-Party Luís Roberto Demarco Almeida to Intervene in Order to Seek Unsealing of Certain Documents ("Demarco Reply") 1, May 1, 2008.) Judicial documents, "entitled to a presumption of public access, are items filed with the court that are relevant to the performance of the judicial

6

function and useful in the judicial process." *TheStreet.com*, 273 F.3d at 231 (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*") (internal quotations omitted). This Court must determine whether the documents sought are "judicial documents" and should therefore be categorically excluded from *Martindell*'s strong presumption against access to sealed documents. The "mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*"). Rather, the document must be "relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document." *Id.* at 145. As such, the presumption of access afforded to documents filed with the court varies with their relevance to the parties' substantive rights. Specifically, whether protected documents "fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) ("*Amodeo II*"). While documents "material to a court's disposition of a case on the merits" carry a strong presumption of access, documents exchanged by parties during discovery have the weakest presumption of access. *Diversified Group*, 217 F.R.D. at 158-59; *Amedo II*, 71 F.3d at 1050.

In this case, the documents Demarco seeks were not used by the Court to make any substantive rulings. While it is true that some of the documents were attached to a motion for a preliminary injunction, that motion became moot when the Parties entered a stipulation that resolved the issue raised in the motion. (Doc. No. 606, Mar. 21, 2008.) Thus, the Court did not use these documents to make a substantive determination. Because the targeted documents do not fall within the category of judicial documents, Demarco has no presumptive right of access.

7

### b. The *Martindell* Presumption Against Modification is Not Applicable

Opportunity and Citigroup contend that a presumption against the modification of the confidentiality order, rather than a presumption of access, should apply. Relying on *Martindell v. Int'l Tel. & Tel. Corp.*, they argue that they "should be entitled to rely upon the enforceability of a protective order against any third parties." 594 F.2d 291, 296. They maintain that there is "a strong presumption against public access" because they "reasonably relied on the protective order." *TheStreet.com*, 273 F.3d at 234.

In determing whether a party reasonably relied on a protective order, the court should consider four factors: (1) the scope of the protective order; (2) the language of the order itself; (3) the level of inquiry the court undertook before granting the order; and (4) the nature of reliance on the order. *EPDM*, 255 F.R.D. at 318. The court should also consider the proposed intervenor's purpose in seeking the modification and the type of materials sought. *Id.* at 318-19.

Opportunity and Citigroup argue that *Martindell* should apply because the confidentiality order was not improvidently granted, and Demarco has failed to offer a compelling need or extraordinary circumstance that overcomes the *Martindell* presumption. In contrast, Demarco argues that, because of the "umbrella" nature of the confidentiality order and the attendant lack of court intervention in designating confidential materials, Opportunity and Citigroup failed to show good cause upon issuance of the stipulated confidentiality order. (Demarco Reply 1-2.)[4] Thus, under Demarco's theory, lack of good cause is an extraordinary circumstance that overcomes *Martindell*'s presumption and warrants modification.

Opportunity and Citigroup argue that stipulated, umbrella confidentiality orders are not

---

[4] In his initial notice of motion and memorandum, Demarco argued that he was entitled to a presumptive right of access to the materials because they should be classified as judicial documents. Only in his reply memorandum does he address *Martindell*'s standard for modifying a protective order.

8

per se improvident even if good cause was not shown. The Court agrees. Demarco may, however, demonstrate that Opportunity and Citigroup cannot *reasonably rely* on their confidentiality order if there was no good cause shown. *See Agent Orange*, 821 F.2d at 147-48; *The Street.com*, 273 F.3d at 231.

### (1) Scope

A key consideration for assessing reasonableness is whether the protective order is an "umbrella" blanket-type order, or a targeted protective order. Umbrella orders, and especially stipulated protective orders, give the parties wide berth to give sweeping protection to most or all material produced in the litigation. While umbrella orders, granted as an accommodation to the parties, may be useful and expeditious in large scale litigation, *see Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1122 n.18, 1123 (3d Cir. 1986), they can simultaneously be overbroad and abusive. *See Schiller v. City of New York*, 04 Civ. 7922 (KMK)(JCF), 2007 WL 136149, at *19 (S.D.N.Y. January 19, 2007); *EPDM*, 255 F.R.D. at 319-20 (noting that "blanket protective orders . . . are by nature overinclusive and . . . peculiarly subject to later modification," and that "[s]tipulated blanket orders are even less resistant to a reasonable request for modification") (internal quotations and citations omitted). "A protective order granted on the basis of a stipulation by the parties carries less weight than a protective order granted after a hearing to show good cause." *EPDM*, 255 F.R.D. at 321; *see also Fournier*, 242 F. Supp. 2d at 341) (citing *Agent Orange*, 821 F.2d at 147-48). By contrast, targeted protective orders designate specific documents after a request for confidentiality, and are typically granted by a court after a good cause hearing. *See, e.g., Martindell*, 594 F.2d at 292-93 (protective order applied only to the transcripts of twelve deponents).

Here, the confidentiality order is a stipulated umbrella order under which the Parties had

9

free reign to designate confidential any and all documents, including "things belonging to or concerning a party," upon a good faith showing only. (Amended Confidentiality Stipulation and Order ("Amd. CO") ¶ 2, Mar. 24, 2006.)[5] The order allowed either party to retroactively designate materials that were produced prior to the order's issuance. The order is particularly broad and not foucused on any narrow set of materials, and it allows unilateral designation by the Parties without court intervention.[6] As such, it is dissimilar to the protective order in *Martindell* and more closely resembles protective orders that have been modified, in part because of their expansive scope. *See Fournier*, 242 F. Supp. 2d at 341-42; *Schiller*, 2007 WL 136149, at *19.

### (2) Express Language

"Where a protective order contains express language that limits the time period for enforcement, anticipates the potential for modification, or contains specific procedures for disclosing confidential materials to non-parties, it is not reasonable for a party to rely on an assumption that it will never be modified." *EPDM*, 255 F.R.D at 320; *TheStreet.com*, 273 F.3d at 231. The order at issue here contains conflicting provisions regarding the temporal application of confidentiality that suggest opposing levels of reliance. The presiding judge signed and stamped the original September 6, 2005 confidentiality order with the following language: "Notwithstanding anything to the contrary herein, any papers filed under seal in this action may

---

[5] According to the Amended Confidentiality Stipulation and Order, " 'CONFIDENTIAL' documents, information or things are those that constitute, reflect or contain trade secrets or non-public, proprietary or business-sensitive information or things belonging to or concerning a party and that a party designates in good faith as 'CONFIDENTIAL.' " (Amd. CO ¶ 2.)

[6] The Confidentiality Order states: "[d]ocuments, information, and things produced by a party during the course of this litigation . . . may be designated by such party as 'CONFIDENTIAL' at the time of production. After such time, a document, information, or thing may be designated as 'CONFIDENTIAL' in writing, by any party, provided that any such designation shall be within a reasonable time after disclosure." (Amd. CO ¶ 3a.)

10

be made part of the public record on or after 9/6, 2010, unless the Court otherwise orders." (Confidentiality Stipulation and Order ("Original CO") 12, Sept. 6, 2005.) Further, the order "does not govern proceedings during trial." (*Id.* ¶ 1.) Because the order is time limited, applicable to pretrial litigation only, and the litigation in this case has ended, the Parties' continued reliance is less consequential. On the other hand, the confidentiality order provides specific instructions to the Parties and the Clerk of the Court regarding destruction or, alternatively, the return of confidential materials upon the termination of litigation. (Original CO ¶ 13.) These instruction suggests that the Parties sought to keep the designated material confidential indefinitely.

Second, the language indicates that the Parties anticipated the potential for modification. The reasonableness of the Parties' indefinite reliance on a confidentiality order is diminished if they plan for its modification. *See, e.g., Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126 (2d Cir. 2006); *Allen v. City of New York*, 420 F. Supp. 2d 295, 301 (S.D.N.Y. 2006). This confidentiality order permits the Parties to challenge a designation and, if a dispute arises, to seek court intervention to "remove or change" a particular document's designation. (Original CO ¶ 6.) Further, the confidentiality order does not limit a party's right to seek judicial modification of the order. (*Id.* ¶ 11.)

Additionally, Plaintiffs actually sought modification of the original confidentiality order to add an "Attorneys' Eyes only" classification. *Allen*, 420 F. Supp. 2d at 301 (noting that reliance was not reasonable where the Court stated that "the plaintiffs could seek to have the Court revisit its ruling as to confidentiality"). The order approving the classification shows that the court contemplated the potential for modification if a party challenged the designation, stating *"the Court will determine whether there is good cause for the classification."* (Order,

11

March 17, 2006.) (emphasis added). Moreover, the Parties stipulated to expand the confidentiality order to include new defendants who were added after the prior orders had been entered. (Order Concerning Confidentiality, July 9, 2007.)

Finally, the confidentiality order contains specific procedures for disclosing confidential materials to non-parties. *See EPDM*, 255 F.R.D. at 321. While the order appears to limit disclosure to non-parties for litigation purposes only, it states: "Such [confidential] documents . . . shall be used for no other [non-litigation] purpose unless and until agreed to in writing by all parties to this action or authorized by order of the Court." (Amd. CO ¶ 3(i).) Thus, non-parties were permitted to access the confidential information, and modify the order, with consent of the Parties or with a court order.

Together, the time limits, potential for modification, and the procedures for disclosing information to non-parties weigh against reasonable reliance. Though the provisions do not completely undercut the Parties' reliance, on balance, the language substantially reduces the reasonableness of the Parties to rely on the order for "absolute, and unchanging confidentiality." *EPDM*, 255 F.R.D. at 321.

### (3) Level of Inquiry by the Court Prior to Granting Order

The amount of consideration that an issuing court has given to the protective order affects the presumption against its modification. "A protective order granted on the basis of a stipulation by the parties carries less weight than a protective order granted after a hearing to show good cause," where the court's inquiry is substantial. *EPDM*, 255 F.R.D. at 321; *Fournier*, 242 F. Supp. 2d at 341. Citigroup and Opportunity argue that Demarco "has not overcome the presumption of unfairness of modifying the protective order [that has been] reasonably relied on by the parties." (Pls.' Mem. in Opp'n 2 (internal quotations omitted); *see* Defs.' Mem. in Opp'n

12

5.) The fact that a court has entered a stipulated protective order, however, does not automatically affirm the parties' reasonable reliance on the order for the indefinite protection of each item. *See Lugosch*, 435 F.3d at 126. Further, the presumption, as well as the extraordinary circumstances exception, also contemplates the court having held a hearing to show good cause. *See, e.g., TheStreet.com*, 273 F.3d at 226. Applying the presumption to all protective orders without regard to the parties' unilateral control to designate or the court's level of inquiry could "shield stipulated, all-encompassing orders from ever receiving the type of court review contemplated by Rule 26(c)," i.e., good cause shown. *EPDM*, 255 F.R.D. at 322; *Fournier*, 242 F. Supp. 2d at 343-44. Indeed, a court's discretion to modify a protective order would be undermined by a categorical application of the *Martindell* presumption to stipulated umbrella orders.

Here, the Court "So Ordered" the stipulated confidentiality order without a good cause hearing or the opportunity to review the protected materials. The Parties had unilateral control over which materials were selected for confidentiality, and there are no apparent limitations on the types of materials subject to the order. While some categories of materials seem particularly suited to protection, such as "documents . . . that constitute, reflect or contain trade secrets or non-public, proprietary or business-sensitive information," this confidentiality order also includes a category for "things belonging to or concerning a party." (Amd. CO ¶ 2.). The confidentiality order, however, does not list specific documents or provide narrowed categories of documents that may be protected.

The Court's role was largely circumscribed to prospective intervention. For example, the confidentiality order states that a party "may" request an *in camera* review to appropriately designate a hearing transcript as confidential. (Amd. CO ¶ 3f.) A party may also seek a court

13

order to lift a confidential designation. (*Id.* ¶ 6 (c).) Indeed, the Court's most searching inquiry was in response to the request to add an "attorneys' eyes only classification," under which the Parties would also unilaterally designate materials. Good cause had not been shown for any of the documents, and the Court would only intervene to "determine whether there is good cause" if a *party challenged* the classification. (Order, Doc No. 262, March 17, 2006 (emphasis added).) The Court's actual level of inquiry did not interfere with the Parties' expansive control to designate materials protected.

Therefore, the Parties' reliance on the confidentiality order is diminished and the application of the *Martindell* presumption is undermined because this confidentiality order was the result of a stipulation, the Parties had broad unilateral control to designate almost any material confidential without court inquiry, and there was no good cause shown upon granting the order.

### (4) Nature of Reliance

Opportunity and Citigroup's reliance on the confidentiality order was not completely unreasonable. However, the nature of the information protected diminishes the degree of reasonableness that the Court should impart to the Parties: that is, whether the stipulation solved a major discovery dispute and allowed discovery to proceed, or, in contrast, whether the court might have compelled production of the protected materials regardless of the stipulation. "The classic situation in which a party 'relies' on a protective order is where the party creates material during the course of litigation on the understanding that it will be kept confidential–for example, by signing a settlement document or by giving confidential testimony." *EPDM*, 255 F.R.D. at 322-23 (quoting *Allen*, 420 F. Supp. 2d at 300-01 (internal citations omitted)). "Conversely, where the parties have not given up any rights and indeed would have been compelled to

14

produce the discovery materials even in the absence of a protective order, the presumption against modification is not as strong." *EPDM*, 255 F.R.D. at 323.

Some factors support the notion that the Parties reasonably relied on the stipulation. First, Plaintiffs' successful request to add an "attorneys' eyes only" designation after two years of litigation indicates that the Parties wanted to increase the level of protection to prevent the opposing litigants from viewing sensitive material, and appears to evidence their reluctance to produce additional materials without those added protections. Second, the non-public information produced is the type of material that often becomes the subject of confidentiality orders. Indeed, a degree of reliance on the confidentiality order was reasonable in light of the type of litigation and the claims asserted.

Other factors suggest that their reliance was unreasonable. If the internal, financial and trade secret information was particularly relevant to the claims in the now-settled suit, those materials would have been discoverable and subject to a motion to compel, a circumstance that diminishes the reasonableness of the Parties' reliance. A motion was in fact filed before the stipulation of settlement.

On balance, the Court finds that the Parties' reliance on the order was not unreasonable given the nature of the litigation. Nevertheless, the Parties' reliance was not so overwhelming as to warrant the indefinite application of *Martindell*'s strong presumption against modification because the order's broad scope and express language, and the minimal level of court inquiry outweigh the Parties' reliance. Instead, in the absence of a good cause showing, the Parties' were entitled to rely on its protection to the extent that a party (or intervenor, as is the case here) could make a good faith, legitimate challenge to the protective designation. (*See* CO ¶ 6c.)

### c. Demarco's Purpose in Seeking the Documents is Not a Compelling Need That Justifies Modification

The intervenor's purpose in seeking the documents is another important factor when considering a request to modify. Specifically, the court may consider whether the intervenor can obtain the materials through his own discovery initiative and whether the purpose for modification is to give the public access to the materials. *EPDM*, 255 F.R.D. at 324; *see TheStreet.com*, 273 F.3d at 233. In *EPDM*, where the court permitted limited modification subject to the existing protective order, the intervenor was "the lead plaintiff in a collateral Canadian class action suit against EPDM suppliers." *EPDM*, 255 F.R.D. at 313. The collateral suit was "essentially" the same antitrust price fixing claim and both cases arose "out of the same nucleus of operative facts." *Id.* There, the intervenor specifically sought modification to avoid duplicative discovery. *Id.* at 314.

The documents attached to the preliminary injunction motion involved a version of the Kroll Report and documents related to the Highlake transaction. (*See* Defs.' Opp'n 4.) Opportunity and Citigroup maintain that the documents were properly designated because they contain confidential information related to their internal business dealings, and argue that Demarco has no compelling need to gain access to them.[7] Demarco seeks these documents for use in his defense in Brazilian civil litigation initiated by Opportunity, Ltd. and in connection with his role as a prosecution assistant in Brazilian criminal proceedings against Opportunity Defendant Dantas. (Demarco Mem. 1.)

Unlike the intervenor in *EPDM*, Demarco's purposes for seeking modification are too

---

[7]While Citigroup has indicated that it is "prepared" to unseal certain documents, they also maintain that the materials at issue were designated in good faith. (Pls.' Sur-Reply 6.) Their willingness to unseal these documents is further indication that it was unreasonable for the Parties to expect the confidentiality order to endure indefinitely. Nevertheless, Citigroup's position does not affect Demarco's reasons for seeking modification.

16

attenuated and dissimilar from the underlying claims in this case to justify modifying this confidentiality order. Demarco's reasons provide no basis for the Court to find that he seeks to give the public access to the documents, or to litigate in the public's interest, as might be the case in an antitrust suit. Demarco's role in pending foreign litigations is not a compelling reason for modification. At best, his role permits him to seek intervention, and, at worst, he appears to be using his purported status to avoid discovery limitations that he has encountered in Brazil. Demarco's alleged need for discovery, however his role is described, would require this Court to engage in a fairly significant inquiry into the rules and limits of discovery in the various foreign locations to determine the propriety of his request.

Demarco's role as prosecution assistant does not establish a need. The title merely gives him "the right to apply for all means of evidence." (Affirmation of Marcelo Elias in Supp. of Mot. of Luís Roberto Demarco Almeida to Intervene ¶¶ 2-3, May 1, 2008 (citing a translation of Brazilian Criminal Process Code § 271).) Indeed, Demarco's "right" may be limited to use in Brazilian courts only. To the extent that documents filed in this case are relevant to the Brazilian prosecution, Demarco may *apply* for such documents, and the Court assumes that such an application has been made. (*See id.* ¶¶ 8-9.) But the right to apply is not, by itself, a compelling need. Also, the Court would essentially have to assess the relevance of the documents to the Brazilian litigation and prosecution. Yet, that task should be precisely reserved for judges in Brazil.

Demarco does not state whether he can obtain the discovery from the Parties via Brazilian discovery procedures. Before seeking this Court's assistance, Demarco must demonstrate that he has availed himself of available procedures and that his motion here is not an attempt to avoid discovery limitations in Brazil. This appears to be the conclusion in

17

Demarco's attempt to use a state court forum to exercise his status as a prosecution assistant. (*See* Pls.'Opp'n at 3; Decl. Of Michael J. Byars, Ex. A, April 24, 2008 (Hearing transcript, N.Y. Supreme Court, Justice Ramos, Sept. 19, 2006).) In any case, the Brazilian litigation should address whether crimes against Demarco have occurred.

Demarco also seeks access to the documents to ensure that the Parties to this case "do not obtain an adjudication based on representations different from the representations being made to the court in Brazil." Because this case has settled, and there will be no adjudication, Demarco's concern about the Parties' representations are moot.

## IV. CONCLUSION

Opportunity and Citigroup's confidentiality order does not warrant the application of a strong presumption against modification. Instead, after balancing the Parties' interests, the reasonableness of their reliance on the confidentiality order, the order itself, and the intervenor's purpose for seeking modification, Demarco is not entitled to modify the confidentiality order to assist litigation in Brazil. For the foregoing reasons, Demarco's motion to intervene is **GRANTED**, but permission to modify the confidentiality order is **DENIED**.

**SO ORDERED this 2nd day of March 2010**
**New York, New York**

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**